## PACKING COMPANY CASES.

### PACKING COMPANY *v.* PROVISION COMPANY; SAME *v.* BEEF-CANNING COMPANY; SAME *v.* SAME.

1. Reissued letters-patent No. 6370, bearing date April 6, 1875, granted to William J. Wilson "for improvements in processes for preserving and packing cooked meat," are void, all the elements therein described being old, and the aggregation of them bringing out no new product, nor any old product, in a cheaper or otherwise more advantageous way.
2. The first and third claims of reissued letters-patent No. 7923, bearing date Oct. 23, 1877, granted to John A. Wilson "for improvement in sheet-metal cases," are void for want of novelty.

THE first case is an appeal from the Circuit Court of the United States for the Northern District of Illinois, and the second and third are appeals from the Circuit Court of the United States for the Southern District of Illinois.

By stipulation of the parties these cases were argued together as one case.

The bills of complaint were filed by the Wilson Packing Company, Arthur A. Libbey, Archibald McNeil, and Charles P. Libbey, and they charge the Chicago Packing and Provision Company, the St. Louis Beef-Canning Company, and the other defendants with the infringement of several reissued letters-patent of the United States, of which the complainants are the assignees and owners.

Only two of these letters are relied on. *First*, reissued letters-patent No. 6370, granted to William J. Wilson, dated April 6, 1875, upon an application filed April 2, 1875, "for improvements in processes for preserving and packing cooked meat;" and, *second*, reissued letters-patent No. 7923, granted to John A. Wilson, dated Oct. 23, 1877, upon an application filed Oct. 15, 1877, for "improvement in sheet-metal cases." The bills were dismissed on final hearing, and the complainants appealed.

The original patent to William J. Wilson bears date March 31, 1874. The specification is as follows: —

"Be it known that I, Wm. J. Wilson, of Chicago, in the county of Cook, and State of Illinois, have invented certain new and useful

improvements in processes for preserving and packing cooked meats, and I do hereby declare that the following is a full, clear, and exact description thereof.

"The nature of my invention consists in a process for packing cooked meats for transportation in a compressed form, while heated with cooking, into an air-tight package, so as to preserve the meat in its integrity and retain all the natural juices and nutritious qualities of the meat.

"In carrying out my invention, the meat is first cooked thoroughly at a temperature of 212° Fahrenheit, so that all the bone and gristle can be removed, and the meat yet retain its natural grain and integrity. The meat is then in proper condition for eating, and is wholesome and palatable. A measured quantity of this cooked meat is then, while yet warm with cooking, pressed by any suitable apparatus into a previously prepared box or case, with sufficient force to remove the air and all superfluous moisture, and make the meat form a solid cake. The box or case is then closed air-tight upon the meat.

"The meat is thus packed and compressed in its natural state,—that is, without disintegration or desiccation,—and it retains all the juices and nutritious qualities of the meat, the compression only removing the superfluous moisture. The meat thus put up is available at all times, even when cooking is impracticable, as it is already cooked before it is packed. It is more economical, as it is compressed and reduced in weight one-half from the uncooked weight, being free from bone and gristle, and put up in a compact, portable shape for transportation, rendering the usual expensive cooperage unnecessary. Besides this, there is a great saving in the cost of transportation. A barrel containing two hundred pounds uncooked meat weighs, gross, three hundred and twenty pounds, meat, salt, brine, and barrel, while by my process it would weigh only one hundred and ten pounds, gross, making a saving in cost of freight alone of nearly two-thirds.

"The box or case may be made of wood or metal, or both combined, of any suitable form or shape, and of any desired dimensions."

The claim is thus stated : —

"1. The within-described process for packing cooked meats for transportation, by compressing the same into an air-tight package, so as to preserve the meat in its integrity, and retain all the nat-

ural juices and nutritious qualities of the meat, substantially as set forth.

"2. As a new article of merchandise, cooked meat put up in solid form, in its natural state, without disintegration or desiccation, in hermetically sealed packages, as set forth."

The differences between the specification and claim of the reissued and those of the original patent of William J. Wilson are these: *First,* the second clause of the specification of the reissued patent omits the words " *while heated with cooking,*" contained in the corresponding clause of the original; *second,* "*preferably*" in the third clause of the specification is inserted before " *while yet warm with cooking ;* " *third,* the first claim of the reissued patent omits " *while heated with cooking,*" contained in the first claim of the original patent. In all other respects the specifications and claims are identical. Therefore his patents are the same, except that the reissue covers the process of packing the meat cold if preferred, while the original requires that it shall be packed while warm with cooking.

There is nothing in either patent in regard to the boiling or to any preliminary corning or curing of the meat.

On Oct. 26, 1880, while the cases were pending below, and after the testimony-in-chief of the defendants had been taken, the patentee and the complainants filed in the Patent Office a disclaimer of the word " preferably " where inserted in the specification of the reissued patent, and also of any process described and claimed by which meat in any other than a warm or heated condition is to be compressed into the packages.

On the same day they filed a disclaimer of any interpretation or legal construction of the specification of the reissued patent broader than is conveyed by the words, " the meat is first cooked thoroughly by boiling it in water, so that all the bone and gristle can be removed and the meat yet retain its natural grain and integrity."

The claim was thus restored to what it was originally, except in the original patent it is limited by the second disclaimer to the packing of meat cooked by boiling. As amended by the disclaimers the claim of the reissued patent is as follows : —

*First,* The within-described process of packing, for transportation, meats cooked by boiling, by compressing the same while heated with cooking into an air-tight package, so as to preserve the meat in its integrity, and retain the natural juices and nutritious qualities of the same.

" *Second,* As a new article of manufacture, meat cooked by boiling, put up while heated with cooking, so as to form a solid cake in the package in its natural state, without disintegration or desiccation, in hermetically sealed packages, as set forth."

It will be seen that the invention, after the disclaimers were made, is a process consisting of the following elements : —

1. The thorough cooking of the meat by boiling in water at a temperature of 212° Fahrenheit, and the removing of the bone and gristle.

2. The pressing of the meat while warm with cooking into a box or case with sufficient force to remove the air and superfluous moisture, so as to make the meat form a solid cake.

3. The closing of the box or case air-tight upon the meat.

It also covers the product of this process as described in the second claim.

The defence sets up want of novelty, and avers that the process described in the reissued letters-patent of William J. Wilson is also described in prior English, French, and American patents, which are specified, and that it was practised by many persons whose names and residences are given, at various dates prior to his application.

The specification in John A. Wilson's letters-patent declares that the " invention relates to hermetically sealed cans used in packing meats or other articles, and it consists in a pyramidal-shaped can having rounded corners, and both ends slightly flaring to form shoulders against which the head or end pieces rest.

Figure 1 is a perspective view of the can. Figure 2 is a transverse vertical section of the same, reversed.

" *a* represents the body of my can made in the form of a truncated pyramid with rounded corners, and with any desired number of sides, though I prefer to make it with four sides. Both ends of the body are made slightly flaring so as to form interior shoulders of offsets *a,* against which the heads B and C are to rest. The edges of these heads are turned outward, as shown, *a, b,* and the

flaring edge *d* of the end of the can is turned over the flange *b*, and the three thicknesses of metal pressed together by machinery, with or without solder, so as to make air-tight joints."

"In packing cooked meats it is done by means of a plunger through an aperture in the large head B, which opening is afterwards hermetically sealed by means of a cap or plate D.

"The can is to be opened at the larger end at or near the shoulder *a* by means of a suitable can-opener, so that when the can is reversed a slight tap on the smaller head C will cause the solidly packed meat to slide out in one piece, so as to be readily sliced as desired."

*Fig 1.*          *Fig. 2.*

The claims which are in controversy in this case are the first and third, which are as follows :—

"A can for packing food, hermetically sealed, and constructed of pyramidal form, with rounded corners, and offset ends to support the heads, said heads being secured as shown and described."

"3. An improved article of manufacture, solid meat compressed and secured within a pyramidal case or can, so that said can forms a solid mould for the meat, and permits its discharge as a solid cake, substantially as described."

The cases were argued by *Mr. William Henry Clifford* and *Mr. John N. Jewett* for the appellants, and by *Mr. Lewis L. Coburn* and *Mr. John W. Noble* for the appellees.

MR. JUSTICE WOODS, after stating the case, delivered the opinion of the court.

The patent granted to William J. Wilson does not specify

what kind of box or case was required, nor what kind of meat was to be used in its processes, whether corned or fresh, nor in what manner or by what process it was to be compacted in the case or box, provided sufficient force was used to remove the air and all superfluous moisture and make the meat form a solid cake, nor the degree of warmth necessary in the meat when it was put in the case or box. Neither does it state the method by which the case is to be sealed up. It is simply required to be " closed air-tight upon the meat," the air having first been excluded from the case by cramming the latter full of meat.

The patent, therefore, apparently covers only the process of cooking meat by boiling, and while it is still warm pressing it compactly in cases and sealing it up air-tight.

The second disclaimer of Wilson is a substantial admission that his patent only covers the process in which the boiling of the meat is one of the elements. That is to say, any one may pack cooked meat for transportation by compressing it while heated with cooking into air-tight hermetically sealed packages, so as to preserve it in its integrity and retain all its natural juices and nutritious qualities, substantially as set forth in the patent, and not infringe the patent, provided he does not cook the meat by boiling. If any other method of cooking the meat should be adopted, there would be no infringement.

The patentee and the complainants, it appears, were induced to make this disclaimer by the evidence introduced by the defendants in this case, especially the patent of A. S. Lyman, dated June 22, 1869, "for an improved mode of preparing and pressing roast meat in a condensed and concentrated form," and it amounts to an admission that they could not sustain the process covered by their patent, except as applied to boiled meats.

We are clearly of opinion that a change in the mode of cooking the meat from broiling, roasting, or steaming to boiling, all the other parts of the process remaining unchanged, cannot be called invention, and does not entitle the party who suggests the change to a patent for the process. " All improvement is not invention, and entitled to protection as such. Thus

to entitle it, it ought to be the product of some exercise of the inventive faculties, and.it must involve something more .than what is obvious to persons skilled in the art." . *Pearce* v. *Mulford*, 102 U. S. 112. See also *Rubber-Tip Pencil Company* v. *Howard*, 20 Wall. 498; *Hotchkiss* v. *Greenwood*, 11 How. .248; *Stimpson* v. *Woodman*, 10 Wall. 117.

If meat cooked by roasting or steaming, and put up in a given mode, formed a valuable article of commerce, the cooking· of the ·meat in other ways, as, for ˙ instance, by boiling, would naturally occur to any one engaged in the business of packing such food for the market.

But we think there is nothing new in the process covered by the patent under consideration. Clearly, all its separate elements are old and well known, and have been long used. ·This is not controverted. The evidence shows that the process of boiling meat, .packing it while warm in. cans, and sealing it air-tight, had long been used before the original application of Wilson. There is, it is true, much conflict in the evidence, ·but, taken all together, it ·leaves no doubt in our minds that the process of cooking meat, lobsters, and other articles of food by boiling, and, while warm from the cooking, compacting them in cans, which are then· sealed up air-tight, was practised in mahy. places and for many years before his application.

Complainants, however, insist that there are two elements .in their process which, taken in connection with the· others above mentioned, form a combination never used before the date of his patent.

The first of these is the subjecting of the cases, after they are packed and sealed air-tight, to what is known as the Appert process. Thatisconsists of placing in hot water the cans, after they have been filled and sealed up, and thereby heating them. They are then removed and punctured, and the heated ˙air and gⱥⱬes in the˙ cans are allowed to escape. The puncture is immediately closed by a drop of solder.

The contention is that all this is made a part of the process covered by .the Wilson patent, by the description of the new article of merchandise covered by the second claim as " cooked meat " " in hermetically sealed packages." ˙ It is insisted that the term " hermetically sealed packages " implies among those

dealing in canned goods, that the packages have been subjected to the Appert process.

We think that this is an unwarrantable stretch of the meaning of that claim. The article of merchandise which it covers is produced by the process disclosed by the specification and first claim. The second claim expressly states that it covers cooked meat put up in solid form, &c., "in hermetically sealed packages, as set forth."

Recurring to the specification and first claim, we are not left in doubt about what, as there set forth, is the process of sealing the cases or cans hermetically. The invention is declared to consist in a process for packing cooked meats into an air-tight package. The method of doing this is thus described : " A measured quantity of this cooked meat is, while yet warm with cooking, pressed by any suitable apparatus into a previously prepared box or case with sufficient force to remove the air and all superfluous moisture and make the meat form a solid cake. The box or case is then closed air-tight upon the meat.". The process is simply to exclude the air from the case by filling it compactly with cooked meat still warm, so that the cover, when applied, will rest on the meat, and then closing the case by fitting on the cover air-tight.

There is no suggestion here of anything further to be done to make the package a hermetically sealed one. The process described leaves it hermetically sealed. There is no hint that the Appert process is to be subsequently applied as a part of the process covered by the patent. On the contrary, that idea is excluded by the terms of the second claim, " hermetically sealed, as set forth."

It is further contended by the appellants that the process disclosed by the patent includes the cooking of the meat to be canned by plunging it into water already heated to the boiling-point. That is, the process of cooking is commenced by placing the meat in water already heated up to 212° Fahrenheit. By this method of cooking, it is said that the meat is preserved in its integrity, and all its natural juices and nutritious qualities are retained.

We think that the plan of beginning this process of cooking, by putting the meat in water already heated to the boiling-

point, is not set forth in the specification or claims.   The conditions that they prescribe would just as well be filled by placing the meat in cold-water which is then heated to the boiling-point, and allowing the meat to remain in it until cooked thoroughly.   No person, on reading them, could extract the idea that there was any advantage to be gained by heating the water to the boiling-point before placing the meat in it to be cooked, or that any such method was in the mind of the inventor. This part of the process is clearly an afterthought, and not intended by him to be covered by his patent when he applied for it.   It is evident that the part now under consideration is nowhere described in the specification in full, clear, and exact terms, as required by law.   On the contrary, it is not described at all.

The Appert process, and the cooking of meats by plunging them into water already heated to the boiling-point, may be of great advantage to the canned meats put up by the complainants, and their alleged superiority to the products of other parties may be attributed to these practices.   But the trouble with complainants' case is that these elements are not included in the process disclosed by the patent which they allege is infringed by the defendants.

Our conclusion is, therefore, that there is nothing new in the process described in the patent.   All the elements of the process are old.   They are merely aggregated, and the aggregation brings out no new product, nor does it bring out any old product in a cheaper or otherwise more advantageous way.   This disposes of the first claim of the patent under consideration.   If that claim cannot stand, it follows that the second claim, which is for the product made by the employment of the process described in the first claim, is also invalid.

We are of opinion, therefore, that the patent is void for want of invention and for want of novelty in the process described therein.

We shall next consider that branch of the case which rests on the letters-patent to John A. Wilson for improvements in metallic cans for containing cooked meats.

The defences set up to this branch of complainants' case are,

that the devices covered by the patent are not new, and that the defendants do not infringe.

The evidence clearly shows that none of the defendants use cans " with offset ends to support the heads, said heads being secured as shown and described" in the patent. The cans which they use are made by turning a flange of the head down over the outside of the shell of the can, and fastening the head in place with solder. This method of fastening the heads and bottoms of the cans was practised by Gibbie and Perl before the date of Wilson's application for his patent. It was also described in the fifth addition of the French patent of Emile Peltier, dated April 1, 1859.

All, therefore, that is left to consider is whether the shape of the can described in the patent is new, and whether the defendants use it.

The shape of the can described in the patent is pyramidal, with round corners, and with four or more sides.

It is admitted on the record by counsel for the complainants that, prior to the date of the Wilson patents, conical tin cans were made and used for canning alimentary substances, and sealed air-tight.

If it be conceded that the change of a conical can to a pyramidal can, with rounded corners, involves invention, the complainants are met with distinct and unequivocal evidence that cans used for containing preserved food, and closed air-tight, having four or more sides and pyramidal in form, with rounded corners, were mentioned in the fifth addition to the patent of Emile Peltier, before referred to, and that the machinery for making them was therein described.

The cans used by the defendant the St. Louis Beef-Packing Company, and by the defendants Robert D. Hunter and others, and the Chicago Packing and Provision Company, are all included in the descriptions of the Peltier patent. The defence of want of novelty set up by the defendants against the first claim of the patent must therefore prevail.

What has been said leaves nothing for the third claim of the patent to rest on.

There is nothing new either in the shape, construction, or material of his cans. There is in the record abundant evidence

that, long before the date of his patent, cooked meat was packed in cans, so that they served as a mould for the meat, and the meat formed a solid cake. The use of a pyramidal can, which was old, for the purpose of receiving the meat cake, which was also old, involved no invention.

The use of vessels with flaring sides, as receptacles and moulds for edible substances, is as old as the art of cookery.

Our conclusion is that both the first and third claims of the patent are void for want of novelty.

The result of the views expressed is that the action of the court below dismissing the bills of complaint was right.

*Decrees affirmed.*

NOTE. — *Packing Company* v. *Clapp*, appeal from the Circuit Court of the United States for the Northern District of Illinois, was argued at the same time with the cases disposed of in the foregoing opinion, and by the same counsel. It involved the validity of both claims of the reissued patent of William J. Wilson, and the first and third claims of the reissued patent of John A. Wilson. Upon these questions the opinions of the judges of the court below were divided, and a decree dismissing the bill was thereupon entered in accordance with the opinion of the presiding judge.

MR. JUSTICE WOODS, in giving the opinion of the court, remarked, that the views expressed in the foregoing cases disposed of this case.

*Decree affirmed.*