## No. 9328.

### THE BALTIMORE AND OHIO TELEGRAPH COMPANY VS. MORGAN'S LOUISIANA AND TEXAS RAILROAD AND STEAMSHIP COMPANY.

Where plaintiff and defendant are citizens of the same State, and the intervenor a citizen of another State, the latter cannot remove the cause pending in a State court to the Federal court, unless the controversy between him and the plaintiff can be fully determined in the absence of the defendant from the suit.

Where the law requires that the charter of a corporation must declare "the time when and the manner in which payments on stock subscribed shall be made," held that, where the charter declares "that the stock shall be paid in cash at such times and such amounts and with such notices to the subscribers as the managers and directors shall deem best for all parties in interest," it is a substantial compliance with the law. In an expropriation proceeding where the land sought to be expropriated extends through more than one judicial district, the suit must be brought in the district in which the owner has his domicile.

The map or plan required to accompany the petition for expropriation, which in connection with the petition gives intelligible information respecting the locus and condition of the land sought to be expropriated. complies with the legal requirements.

Where a proceeding for expropriation is directed against the owner of the soil to secure a sufficiency of land for a telegraph line, and a company intervenes and claims that the owner has already conveyed to it (the intervening company) the entire space for telegraph purposes sought to be expropriated for like purposes, but alleges no special injury to itself from the expropriation, or that the land occupied by it (the intervening company) is insufficient for both lines of telegraph, held that no cause is shown by the intervenor,

Where a telegraph company seeks to secure by an expropriation a sufficiency of the right of way of a railroad to construct its line of telegraph. and another telegraph company seeks to exclude the first company from such right of way of the railroad on the ground that it is entitled to the entire right of way under a contract with the railroad company, such a claim can only be urged on the theory that such opposing company possesses the exclusive right to the land against which the proceeding for expropriation is directed.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*J. R. Beckwith* for Plaintiff and Appellee:

1.  In expropriation of land for works of public utility, the owner of the land is entitled to the value of the land actually taken, at the market value of the same area or acreage of land similarly situated in the same locality at *the time* the land is actually taken, without considering any enhanced value which will result from the contemplated improvement when completed.

2. If the *entire* tract belonging to a land owner is taken, the market value of the land at *the time of taking*, irrespective of the effect of the contemplated improvement on the price, is all the land holder can recover for *both land and damages*.

3. Where only a portion of an owner's land is taken, the owner is entitled to the *market value* of the land *actually taken*, not to be enhanced by the effect of the proposed improvement on the land taken or land in the vicinity, *and* such damages as the owner may suffer in addition of the actual value of the land taken, by reason of its expropriation. The jury must first ascertain the *actual market value* of the area of land *actually taken*, and then pass to the question whether the portion of the land of the land holder *not taken* is depreciated in value by the expropriation of the part taken.

4. That the true method of arriving at the damages to be paid *in addition* to actual value of the land is to first ascertain the value of the entire tract at the moment of taking, without taking into consideration any increase in value to flow from the *completed improvement*, and having ascertained that value at *that time*, then ascertain and determine the market value of the portion of the land *not taken* from the land holder by expropriation at its market value. *after the contemplated improvement is completed*, and the *difference* between the market value of the *entire tract before expropriation* and before the improvement, and the *market value which the portion of the tract not expropriated* will have *after* the contemplated improvement *is completed*, is the true measure of the amount of *damage* "beyond the actual value of the land taken," which should be awarded to the land holder as damages.

5. If the advantage which will result to the land holder from the improvement are greater than the damage which will result to him from the *completed public improvement* or work. the advantage must be set off against the disadvantage, and the land holder can recover nothing for damage "beyond the value of the land taken."

6. If the advantage resulting to the land holder is determined to be *less in money value* than fair compensation to the land holder for "damages beyond the value of the land taken," estimated in money, the ascertained advantages must be offset against the ascertained damages, *and only the difference* in the money estimate of damages and advantages can be allowed the land holder for "damages beyond the value of the land taken."

7. In estimating damage "beyond the value of the land taken," all damage in character "*damnum absque injuria*," or which the land holder suffers in common with others in the vicinity of the improvement. cannot be considered or allowed.

8. Loss of profit from new competitions in business, either caused or encouraged by the new public improvement contemplated, cannot be considered or allowed the land holder as damage resulting from the improvement. It is the duty of the law to encourage lawful competition in all lawful business and occupations.

9. In expropriation proceedings, the jury or commission can only allow as damage, "beyond the value of the land taken," such *direct and immediate* damage as directly affects and lessens the *value* of that portion of the land *not expropriated*, and tends to lessen its value, *as land*, below the market price which the same had before the improvement existed or was contemplated.

The preceding nine propositions are in accord with the following authorities: R. S sec. 701; New Orleans and Opelousas R. R. Co. vs. Lagard, 10 Ann. 158; Vicksburg and Shreveport R. R. Co. vs. Calderwood, 15 Ann. 481; New Orleans Pacific R. R. Co. vs. Gay, Tutor, 31 Ann. 431; Railroad Co. vs. Dillard, 35 Ann. 1005; Railroad Co. vs. Francis, 70 Ill. 238; Snyder vs. Railroad Co., 25 Wys. 60; Railroad Co. vs. Capps, 67 Ill. 607; Pierce on Railroads, 213 ; Schuylkill Navigation Co. vs. Farr, 4 Watts & S. 362; Rover on Railroads, 373, 383; Sutherland on Damages, 442; Troy and Boston R. R. Co. vs. Turnpike Co., 16 Bob. 100; Railroad Co. vs. Old Colony R. R. Co., 12 Cush (Mass); Ricket vs. Metropolitan R. R., 2d English and Irish Repeals (Law Reports) 175; Mills on Eminent Domain, par. 159, p. 194.

10. Section 698 R. S., in so far as it relates to the plan to be filed with the petition in expropriation proceedings, is directory, not mandatory. Remy vs. Municipality, No. 2, 12 Ann. 500.

11. The petitioner having filed a plan with his petition, his plan is simply in aid of the description of the land sought to be condemned. If the defendant asserts the plan to be incorrect, he should plead that both the plan and description in the petition are incorrect, and establish the correctness by affirmative proof. R. S. sec. 698.

12. If the description of the premises contained in the petition and plan described the property with sufficient certainty to make a good conveyance in a deed of conveyance, the statute is complied with. If the description is too faulty to designate the property sought to be expropriated, the owner should raise the issue when an entry is sought to be made after an expropriation. R. S. secs. 698, 699, 700.

13. The Statutes of Louisiana, relating to expropriation for works of public utility, relate only to the expropriation of private property and not property public in destination and character. R. S. secs. 696, 698, 700, Act No. 124, Acts of 1880; The Constitution of 1879, arts. 244, 237.

14. Under the provisions of the Constitution of 1879, and Act 124 of Acts of 1880, a corporation organized under the laws of Louisiana for the transmission of intelligence by telegraph or telephone for hire, has the right of entry on the unoccupied right of way of any railroad company in the State, subject to the conditions and restrictions of said Act 124, without resorting to expropriation, because the railroad is a public highway, as contemplated in Act 124 of 1880. Article 244 of the Constitution, there being no private property in the road. Railroad Co. vs. Casey. 26 Pa. St. 307; Trunick vs. Smith, 36 Pa. St. 18; notes to Dovaston vs. Payne.

Second, Smith's Leading cases: Peck vs. Smith, 1 Conn. 103, 132; Northern Central R. R. Co. vs. Commonwealth, 9 W. N. C. 130; New Orleans vs. Chattanooga R. R. Co., 27 Ann. —; Norwich Gaslight Co. vs Norwich City Gas Co., 25 Conn. 19; Nicholson vs. Railroad Co., 22 Conn. 74; Dillon on Mun. Corp., par. 695, 3d ed; Logan & Son vs. Payne, 43 Iowa, 524; Chicago vs. Rumpf, 45 Ill. 90; State vs. Cincinnati Gaslight and Coke Co., 18 Ohio, St 290, et seq: Messenger vs. Pennsylvania R. R. Co., 7 Vroom, 413; Marriott vs. London and Southwestern R. R. Co., 87 Eng. C. L. 498; Sanford vs. Railroad Co., 24 Pa. St. 378; Audendried vs. Railroad Co., 68 Pa. St. 379; Western Union Telegraph Co. vs. American Union Telegraph Co., 65 Ga. 160, 38 Am. Rep; Beckman vs. Saratoga R. R. Co., 22 Am. Dec. 679.

15. Article 364 C. P., and other provisions of the Code of Practice relating to the intervention of third persons, apply only to the ordinary actions authorized by the Code of Practice, and do not relate to or authorize intervention by third parties in special proceedings for expropriation of lands for works of public utility. The statutes relating to expropriation do not authorize or permit the intervention of third parties. C. P. art. 365.

16. A contract or convention between a railroad company and a telegraph company by which the two corporations sought to vest a telegraph company with an exclusive right to erect telegraph lines on the railroad right of way in the State of Louisiana and throw obstacles in the way of competition, is *ultra vires* the power of each of the corporations and void as *contra bonus mores* and contrary to public policy, and an illegal effort to place the control of a public highway beyond the reach of the State. Audendried vs. Philadelphia and Reading R. R. Co., 68 Pa. St. 379; Western Union Telegraph Co. vs. American Union Telegraph Co , 65 Ga. 160, 38 Am. Rep: Messenger vs. Pennsylvania R. R. Co., 7 Vroom, 413; Marriot vs. London and Southwestern R. R. Co., 87 Eng. C. L. 498; Sanford vs. Railroad Co., 24 Pa. St. 378; Southern and Atlantic Telegraph Co. vs. New Orleans, Mobile and Texas R. R. Co., 53 Ala. 211; Western Union Telegraph Co. vs. Pensacola Telegraph Co., 96 U. S. 1; Thomas vs. West Jersey R. R. Co., 9 W. N. C. 71; Railroad Co. vs. Davis, 43 N. Y. 137; Railroad Co. vs. Seeley, 45 Mo. 212; Redfield

on Railroads, Vol. I, p. 234, note 4, 5th ed; Addison on Contracts, par. 270-274; Lake on Contracts, 734; Addison on Contracts, par. 273; Atlantic and Pacific Telegraph Co. vs. Union Pacific R. R. Co., 1 McCreary, 541; Western Union Telegraph Co. vs. Wabash R. R. Co., 9 Biss. 72; Western Union Telegraph Co. vs. Burlington and Southwestern R. R. Co., 3 McCreary, 131; Thomas vs. West R. R. Co., 101 U. S. 71; American Union Telegraph Co. vs. Pacific R. R. Co., 1 McCreary, 188; Oregon, etc.. vs. Winsor, 20 Wall. 66; Acts of New York. approved April 12, 1848, sec. 4, N. Y. Stat. at Large, Vol. III. 720, 2d ed; Railroad Co. vs. Davis, 43 N. Y. 137.

17. Neither the railroad company nor the Western Union Telegraph Company can object that Act 124 of 1880 is inoperative as to them, because passed subsequent to their pretended contract. 1st Redfield on Railroads, 5th ed. 651; Wynn vs. Railroad Co., 5 Exch. 420; Stevens vs. Railroad Co., 13 Beav. 48; Atkinson vs. Ritchie, 10 East. 530; Pollock on Contracts, Eng. ed 340; Bailey vs. DeCrespigny, L. R. 4, Q. B. 180; Gaslight Co. vs. Middleton, 59 N. Y. 228; Brewster vs. Kitchen, 1 Salk. 198; Western Union Telegraph Co. vs. Atlantic and Pacific Telegraph Co., 5 Neb. 103; Pensacola Telegraph Co. vs. Western Union Telegraph Co., 96 U. S. 1; Western Union Telegraph Co. vs. American Union Telegraph Co.. 19 Am. Law Reg. 173.

18. The jury impaneled in expropriation proceedings under the laws of the State, is a special commission composed of twelve commissioners required to possess peculiar qualifications and fitness, called into existence with special care to fitness, subject to challenge for cause in not possessing the statutory qualifications, and the court will not disturb the estimate of value of the property in damages made by the jury, except for reasons extraordinary in character, showing an erroneous application of the rule of damages. Railroad vs. Hart, 15 Ann. 507; 35 Ann. 1045.

19. The court should construe the laws for the encouragement of works of public utility with that liberal spirit necessary to make them effective to the end contemplated. and ought not to give sanction to or encourage unconscionable devices and obstructions thrown in the way of the enforcement of the statutes when inspired by the greed of rival corporations, acting through the possessor of the land sought to be expropriated, under compulsion of dishonest and fraudulent stipulations of contracts seeking to throttle competition and give a monopoly.

*Leovy & Leovy* and *J. P. Blair* for Defendant and Appellant:

1. Section 683 of the Revised Statutes requires that the charter of a corporation shall contain a statement of the amount of capital stock. the number of shares, the amount of each share. the *time* when and the *manner* in which payment in stock subscribed shall be made. A proviso in a charter that payment shall be made "at such times and in such amounts and with such notices to the subscribers as the manager and directors of said corporation, or a majority thereof, shall deem for the best of all parties in interest," is not a compliance with the statute. The *charter* does not fix *time* or *manner*, but relegates this duty to the officers of the company, and the public is unprovided with the information which it was the object of the charter to give.

2. A jury of freeholders, impaneled in the parish of Orleans, cannot, in an expropriation case, assess the value of lands and improvements in a distant parish. The Act of 1880 (p. 170) requires the suit for such purpose to be instituted before the judge of the district court where the land is situated, or if the land extends into *two* districts, in either of the *two*. And Section 700 of the Revised Statutes (which is not amended by the Act of 1880) requires "that the case shall be tried before a jury of freeholders, *residents of the parish* in which the land lies."

3. The Constitution provides that vested rights shall not be divested, unless for purposes of public utility and for "*adequate* compensation;" and the Revised Statutes (Sec. 700) and the Act of 1880 (p. 171) provide that in case of expropriation, the owner of the prop-

erty expropriated shall be paid the land "with *its improvements*," and such "damages" besides as the owner may sustain. Under these provisions of the law, the owner of the land expropriated for telegraph or railroad purposes is entitled to payment of the value of the property as improved and fitted by him for such purposes. Mills on Eminent Domain, sec. 173; Rorer on Railroads, p. 853; 35 Ann. 1045; 1 Redfield on Railroads, secs. 71, 74; Louisiana Cons., Arts. 155, 156; 98 U. S. S. C. 453.

*Bayne & Denègre* and *G. B. Clark* for Intervenor.

The opinion of the Court was delivered by

TODD, J. This is a proceeding instituted by the plaintiff corporation to expropriate land occupied by the defendant railroad company, as its right of way for the purpose of establishing and constructing its line of telegraph from the city of New Orleans to Lafayette.

The Western Union Telegraph Company intervened in the suit, claiming a right to the use of this roadway and possession of the same for its own telegraph purposes, under a contract with the railroad company defendant, and praying for damages against the plaintiff company, should it succeed in obtaining the expropriation asked for in this suit.

From a judgment in favor of the plaintiff and against the defendant and intervenor, the two latter have appealed.

1st. We will first direct our attention to the motion to remove the cause to the Federal Courts made by the Western Union Telegraph Company, so soon as its intervention was filed and allowed.

This company (the intervenor) was chartered by the State of New York, where it has its domicile. The plaintiff and defendant companies are domiciliated in this State.

This application for removal was made under the alleged authority of the second section of the Act of Congress of the 3d of March, 1875, conferring upon the Federal Courts jurisdiction in certain cases therein enumerated.

An analysis of this section shows, that it consists of two clauses, and that by the first clause removal is allowed only in the following cases:

1st. The amount in dispute must exceed $500, and must arise under the Constitution and laws of the United States or treaties made or which shall be made under their authority.

2d. Or a suit at which the United States shall be plaintiff.

3d. Or one between citizens of the same State, claiming lands under grants of different States.

4th. Or a suit between citizens of a State and foreign States, or the citizens or subjects of foreign States.

5th. Or a suit in which there shall be a controversy between citizens of different States.

It is evident that the removal in the instant case could not be allowed unless under the provision last cited, but the second clause of this section prescribes not only that the controversy must be wholly between citizens of different States, but must be one which *can be fully determined between them without the presence of the other parties to the record.*

Now, this proceeding was resorted to by the plaintiff for one specific purpose: that is to have condemned for its use enough of the right of way of the railroad company, for the erection and maintenance of a line of telegraph from the points designated.

Both plaintiff and defendant are citizens of Louisiana. The intervenor, a citizen of New York, asserts a similar right on the property of the company to that asked by the plaintiff, as already obtained by contract, and a right conflicting with and excluding the claim made by the plaintiff.

It is difficult to see how the claim of the plaintiff against the railroad company and the right of the intervenor upon the property of the same company, and the respective and conflicting claims of the plaintiff and intervenor could be determined in the absence of the railroad company, whose property forms the very corpus or subject matter of the controversy.

There is, however, one feature of the case presented by the record that places this matter beyond doubt.

The intervenor, (Western Union Telegraph Co.,) though asserting an exclusive right in itself over the road-bed for telegraph purposes, does not pray for a decree recognizing such right in its favor, and rejecting by reason thereof the adverse claim of the plaintiff, but merely asks that, in the event the plaintiff company obtains a decree ordering the expropriation sued for, then and in such case the intervening company recover of the plaintiff company the value of the land expropriated. That is, the only relief asked for by the Western Union Telegraph Company is predicated and contingent upon the judgment that may be rendered in favor of the Baltimore and Ohio Telegraph Company (plaintiff) against the railroad company, defendant, which judgment can only be rendered, if rendered at all, in the State Court, since the controversy as between the latter two companies—citizens of the same State—is one confessedly non-removable.

We are therefore clearly of opinion that the motion to remand was properly overruled. See Hyde vs. Ruble, 104 U. S. 407; Corbin vs.

Van Brunt, 105 U. S. 576; Fraser vs. Johnson, 106 U. S. 191; Memphis and Charleston R. R. Co. vs. Alabama, 107 U. S. 581.

II.

A number of exceptions were filed by the defendant to the plaintiff's proceeding; among them we find:

1. One denying or questioning the validity of the charter of the plaintiff Baltimore and Ohio Telegraph Company (plaintiff) on the ground that a law of the State (Sec. 685, R. S.) required that the charter of a corporation must declare among other things "the time when and the manner in which payment on stock subscribed shall be made;" and that the charter, in this instance, only prescribes that the capital stock "shall be paid in cash, at such times and in such amounts, and with such notices to the subscribers, as the managers and directors of said corporation, or a majority thereof, shall deem for the best of all parties in interest."

We think this clause in the charter is a substantial compliance with the law.

The subscription fixed the amount of the stock subscribed, and the liability therefor. The stock is to be paid for by the terms of the charter in installments, as ordered by the managers and directors, and in cash after ten days' notice. This seems sufficiently definite and certain; and in this opinion we are confirmed by the legislative construction given this clause of the statute by a number of charters granted from time to time to various corporations by the legislature. Among others we find that the charter to the company defendant in this case, and which sets up this plea—the Morgan's Louisiana and Texas Railroad Company—contains almost the identical words on this point that the charter of the plaintiff company—the language being as follows:

"The time and manner of payment for stock shall be such as may be determined by the board of directors." Sec. 10, Act 37 of 1877.

The same language may be found in Act 97 of 1877, incorporating the Barataria Ship Canal Company, Sec. 4; and also in the charter of the New Orleans and Jackson R. R. Co., Act 1853, p. 109, and in that of the Mississippi and Lafourche R. R. Co., Act 103 of 1855, and in several other legislative charters unnecessary to enumerate.

2. Another exception was to the effect that "the map or plan filed together with the petition was not such a plan of the right of way as the law required."

We have attentively examined both the petition and the map annexed thereto, and when we consider that the purpose of the proceed-

ing was to obtain an expropriation of land along the line of a railroad long established and well known and defined, sufficient to erect telegraph poles, and further consider that the reason of this requirement was simply to give intelligible information as to the situation or locus of the land wanted and its condition, it is too clear for argument that the description in the petition and delineations in the accompanying map fulfilled completely all legal requirements. There was no possibility of mistake as to what was sought by the suit.

3. Another exception to the plaintiff's suit was:

That the jury impanneled to value the property sought to be expropriated, is from the parish of Orleans and is called upon to value property situated out of said parish.

Section 698 of the Revised Statutes prescribes that in cases of expropriation, the party seeking the appropriation must apply to the judge of the district in which the land may be situated, or if it extends into two districts, to the judge of the district in which the owner resides.

The owner of the Morgan Railroad is the defendant corporation, having its domicile in the parish of Orleans. The land sought to be expropriated extended into two or more districts. The charter of the company moreover provides that it must be sued in the parish of Orleans, that is at its domicile. Therefore the institution of the proceeding in question before the Civil District Court for the parish of Orleans was compulsory, since no other court, under the law referred to, had jurisdiction of the matter.

This law further provides that the judge shall indorse on the petition presented an order directing the clerk to give notice to the owner of the land sought to be expropriated, and that immediately after this order shall have been made by the judge, the clerk and sheriff shall make a list of forty-eight free holders, residents of the parish where the land lies, out of which number shall be drawn the jury to determine the value of the land.

Now it is evident if the court of the domicile of the owner has sole and exclusive jurisdiction of the suit, the officers of that court, the clerk and sheriff, could not go outside of that jurisdiction to select a list of jurors to sit in the case: they, of course, must be confined in their selection to jurors resident of the parish where the suit was brought.

The judge himself would be powerless to direct the drawing or selection of jurors in other parishes beyond his jurisdiction. Therefore to give any effect to the law providing for a proceeding of this kind, it

was absolutely necessary that the jury should be drawn from the parish or parishes within the jurisdiction of the court before which the suit was pending. If any attempt had been made to institute separate proceedings in each of the parishes over which the land extended, it is evident that such attempt would or could have been defeated by a plea to the jurisdiction, since no other court, in such case, could entertain the application under the positive provisions of the law save the court of the domicile of the owner, which, in this instance, was the Civil District Court of the parish of Orleans, and in which parish, it is conceded, that the land in part was situated. This conclusion is irresistible when we consider the several sections of the statute, guided by that rule of construction which seeks to harmonize the apparently conflicting parts in order to render it effective as a whole.

There were other exceptions made, which are not seriously pressed before this Court and which, in our opinion, are without force. The exceptions were all properly overruled.

### III.

The only remaining contention on the part of the defendant is, that the compensation allowed for the land expropriated was wholly inadequate. We have carefully weighed the testimony on this point, which to some extent is conflicting, but when we consider the small quantity of land required for the erection of the poles and the construction of the telegraph line, and the use of which cannot possibly interfere with or obstruct in the least the right of way of the railroad company or impair in any manner the operation of its line, we are not disposed to disturb the estimate of the jury, which was fixed by their verdict at two thousand one hundred dollars.

### IV.

#### The Intervention.

As before stated, the object of the intervention of the Western Union Telegraph Company was to recover from the plaintiff company a sum equal to the amount that might be assessed by the jury as the value of the land expropriated in the event of a judgment decreeing the expropriation. This demand was founded on a contract between the intervenor and the Morgan Railroad Company, in which the exclusive use for telegraph purposes was granted by said company.

This contract was offered in evidence both by the Western Union and the Morgan Company. By the first not for the purpose, as stated in the bill of exceptions, " of establishing any exclusive use of the right of way for its line of telegraph," "which would interfere with

the State's right of eminent domain," "but for the purpose of showing the usufruct and base of said right of way granted to the intervenor," and by the defendant company it was offered with a view of showing the value of the land sought to be expropriated by the plaintiff.

The court properly sustained the objection of the plaintiff's counsel to the admission of the contract for the purpose for which it was offered by the defendant, since plaintiff was no party to that contract and the consideration given by the Western Union, purporting to be for the exclusive use of the entire right of way for its line, was no criterion of the value of the modicum of the land sought to be obtained by the plaintiff for its purposes.

The court, however, erred we think in rejecting the contract on the objections made when offered in evidence by the intervenor.

The main objection was, that the grant of the exclusive use of the right of way for telegraph purpose to the intervenor, was contrary to law and public policy, and rendered the contract void. This plainly went to the effect of the contract or the evidence, and so in fact did every other objection made and noted in the bill.

We find the contract in the record and shall treat it as properly before us.

It is plain that the claim of the intervenor to recover of the plaintiff whatever sum the jury might fix upon as the value of the land expropriated for the use of the Baltimore and Ohio Telegraph Company, can rest alone on the theory of an exclusive grant to the intervening company under its contract with the Morgan's Railroad Company. In the petition of intervention there is no special damage alleged as resulting from the expropriation or the use of the land to be expropriated by the plaintiff.

It is not charged that such use by the plaintiff will interfere with or obstruct the operation of the intervenor's line, or that the right of way of the railroad company is not sufficient for the working of both lines of telegraph; and leaving out the question of the exclusive grant to the Western Union Company—which the contract with the railroad company plainly purports to convey—it would seem clear that the petition of intervention on the very face of it sets forth no cause of action.

Inasmuch, therefore, as the intervenor asks for no judgment against the plaintiff decreeing or recognizing its exclusive use for telegraph purposes of this right of way of the roilroad, but, on the contrary, expressly declines in the petition to press such a claim and disclaims any purpose or intention to assert any such exclusive right under the

contract, and moreover, as we are fully satisfied that no damage could result to the intervening company by the mere construction of plaintiff's line of telegraph,—we think, therefore, for these reasons alone, we are justified in rejecting the intervention, without discussing and determining the effect of this exclusive grant contained in the contract and deciding whether it was legal or illegal, valid or void, a point upon which a lengthy argument has been submitted to us by the plaintiff's counsel.

Nevertheless the question naturally suggests itself as to which company—the railroad company or the Western Union Telegraph Company—should receive the sum awarded by the jury as the value of the expropriations, and which sum was paid into court by the plaintiff. This question, however, we cannot now determine, since there is no issue raised in the pleadings between these two last named companies, touching their respective claims thereto. We have only decided that the plaintiff was legally entitled to the expropriation, and must pay, therefore, the sum fixed by the verdict of the jury. The rights of the intervening and defendant companies not being put at issue, nor passed upon with respect to this fund are of course reserved.

Judgment affirmed.

---

## On Application for Rehearing.

MANNING, J. The application for rehearing complains of the insufficiency of the sum allowed as damages, and the reservation of the intervenor's right to a part of that sum.

We are not disposed to alter the sum assessed by the jury, and our remarks in the concluding paragraph of the Opinion were not intended as a suggestion to the intervenor to institute a new suit, nor to deprive the defendant of receiving the money adjudged to be due it under the terms of the judgment. We simply meant to say that if the intervenor has a just claim to any part of the money awarded as damages, it is not concluded from advancing and pressing such claim against the defendant, but the judgment of the lower court was in favor of the defendant against the plaintiff for the damages and we affirmed it, and therefore the defendant has a present right to that sum according to the terms expressed in the judgment.

Rehearing Refused.