## EMMETT v. METALS PROCESSING CORPORATION.

### No. 9461.

Circuit Court of Appeals, Ninth Circuit.

April 7, 1941.

See also 112 F.2d 713.

Frank W. Beer, of Phoenix, Ariz., for appellant.

Allan K. Perry, of Phoenix, Ariz., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

The judgment appealed from enjoined infringement of a patent by appellant, and was entered in an action brought by appellees, who sought to restrain appellant from infringing letters patent No. 1,947,-493 issued on February 20, 1934, on an application filed July 17, 1931 by one Rose and one Engle as joint inventors. The applicants assigned their rights to appellee Rose-Engle Company, a California corporation, by assignment recorded in the patent office on April 17, 1933. Appellee Metals Processing Corporation, a Nevada corporation, is the exclusive licensee of Rose-Engle Company under the patent.

The patent covers a process of coating machine elements with spring-steel or the like, in order to impart a hard smooth surface to such elements. The specification described the process for covering a piston. The piston is centered in a lathe, and a lathe tool is used at a setting which will cut v-shaped grooves in the surface of the piston and which will break the metal slightly and leave the pores of the metal open and rough to give an adhering surface upon which to spray the metal. The edges of the first and last grooves are undercut. After the grooves have been cut, the piston is rotated and sprayed with metal released by a metal sprayer attached to the tool post on the lathe.

All five claims of the patent are in issue. Claim 1 is as follows: "A process of inlaying a metallic band in the external surface of a metallic machine element, comprising rotating an element in contact with a cutting tool arranged to break the

metal in forming a groove in the surface, the bottom surface of which groove is abnormally broken and rough, and building metal in the groove by spraying."

Claims 1, 2, 4 and 5 cover in different words, the same thing, and will be considered as one. Each of such claims specifies only two steps to the process, which are: (1) the cutting of grooves in the element to be sprayed by rotation of such element in contact with a cutting tool; and (2) the spraying of such element with molten metal. Each of such claims describes the first step as imparting a "broken and rough" surface to the bottom of the groove. Claim 3 differs in that the first step is described as imparting a groove "with a porous or broken bottom wall" and with its edges undercut; and such claim also differs in that it describes the second step as spraying the element while the latter is rotating.

Appellant's answer alleged, among other things, that the patent in issue was invalid for want of invention. The trial court held the patent valid and infringed by appellant, and entered judgment for appellees enjoining use of the process by appellant. This appeal followed.

Schoop patent No. 1,128,058, issued February 9, 1915, is the first patent cited which relates to metal spraying. In the specification of that patent, it is stated:

"Coatings may be made that may be subjected to any desired subsequent mechanical treatment, such as pressing, stamping, dressing, planing, etc., without damaging them or loosening them from their bases.

"* * * It is sometimes advisable to subject the objects to be coated to a certain cleaning action, for example, to cleam them by a sand blast from adhering dirt, oxid, or the like, or by means of an acid or any other substance used for cleaning metal surfaces * * *

"* * * Further, it is readily possible to make seamless metallic tubes, or hollow vessels, and to this end a core of suitable material is placed in the metallic cloud and rotated, or the atomizer may be moved around the core or base to be covered. * * *"

The last paragraph above quoted is also referred to in Schoop patent No. 1,179,762 issued April 18, 1916. In Schoop patent No. 1,256,599, issued February 19, 1918, relating to a process for production of electric heaters, discloses a spraying of metal on a tube revolving in a lathe.

There are many other prior patents relating to the spraying of metal which need not be here noticed. It is apparent that Schoop disclosed the spraying of a machine element with metal while the element was revolving; that the metal sprayed on such element might thereafter be machined; and that it was sometimes advisable to sand blast the element before spraying it. While Schoop did not specifically state that the sand blasting roughened the metal and imparted an adhering surface, the other evidence in the case shows that the sand blast method did have such effect. In short, Schoop disclosed a process of inlaying metal on another roughened surface by spraying metal thereon. There is no difference between Schoop's process and the one in issue, except in the manner of imparting the adhering surface of the element being sprayed, mentioned as the first step of the patent in issue.

The purpose of the first step in the process is, as stated in the specification, "to give an adhering surface for the metal to be sprayed thereon". The alleged anticipating patents disclose that the problem is not new, and that there are many modes used to obtain that result. For example, Martin patent No. 444,797, issued January 13, 1891, relates to a method of decorating glass, whereby portions of the glass are made rough and silver foil is made to adhere to the roughened portion by a tenacious liquid. Martin states in his specification that the roughened portion may be obtained "by any suitable process—such as the sand-blast, or by etching, grinding, engraving, etc. * * *" Likewise, Eppler patent No. 678,383 issued July 16, 1901, relating to the production of inlaid work of any kind of metal on any other kind of material by the electrolytic or galvanic method, describes the recessed part of the material which constitutes the design or part to be filled with inlay as best obtained by use of the sand-blast which is superior to "former methods of engraving and chiseling". It is there also disclosed that undercutting the edges of the recessed portion is an aid to retention of the inlay.

Schoop patent No. 1,128,058, above referred to, mentions sand blasting, and as stated by appellee's witness Martin, Schoop must be given credit for the bonding surface thus obtained, whether he

knew it or not because "it is nevertheless a fact that a blasted bond with sand or steel grit has been a universally accepted practice by the trade in bonding a coating of sprayed molten metal to a base surface by the education of this patent".

Craig patent No. 1,153,197, issued September 14, 1915, relates to the art of casting and uniting metals. The patent discloses the casting of metal inside a copper or other metal ring. The specification states that the ring "is preferably provided with a roughened or uneven surface * * * such as can be produced by a sandblast, so as to cause closer adhesion between" the ring and the metal poured inside it. De Bats patent No. 1,434,047 issued October 31, 1922, relates to a method of uniting hard steel alloys to softer steel bars. The process contemplates the coating of the soft steel bar with copper, preferably in powdered form with a suitable flux which results in fusing the copper when the bar is placed in a heating furnace. The molten hard steel is then poured onto such surface, and as stated in the patent, it "welds or brazes onto" the soft steel bar. Gwaltney patent No. 1,790,213, issued January 27, 1931, describes the preparation of a bonding surface, on which metal is sprayed, by sand-blasting, sand-papering or grinding.

Finally, Deputy patent No. 1,807,689, issued June 2, 1931, relates to a method of making composite pistons. It discloses a sleeve of steel or other metal, which serves as the outside of the piston, and molten aluminum is then poured inside such sleeve, and adheres to such sleeve. The specification describes the preparation of the sleeve, as follows: " * * * In the illustrated embodiment, the entire interior surface of the sleeve has been serrated by cutting a coarse screw-thread spirally along substantially the entire inner surface. The aluminum, when in its original molten state, enters fully between the serrations so as to firmly interlock the two metals * * *"

Thus the art of uniting metals disclosed everything in the process in question except the one point described in the specification of the patent in question, that the lathe cutting "tool is set so that it breaks the metal slightly, leaving the pores of the metal open and rough, to give an adhering surface for the metal to be sprayed thereon". Appellees urge that such act imparts invention.

In Cochrane v. Deener, 94 U.S. 780, 788, 24 L.Ed. 139, it is said regarding a process: " * * * A process is a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing. If new and useful, it is just as patentable as is a piece of machinery. In the language of the patent law, it is an art. The machinery pointed out as suitable to perform the process may or may not be new or patentable; whilst the process itself may be altogether new, and produce an entirely new result. The process requires that certain things should be done with certain substances, and in a certain order; but the tools to be used in doing this may be of secondary consequence."

It must be borne in mind, however, that a thing apparently amounting to invention to one not skilled in the particular field, may be something in the common knowledge of those skilled in such field. This is well illustrated by the following from Atlantic Works v. Brady, 107 U.S. 192, 199, 2 S.Ct. 225, 231, 27 L.Ed. 438:

"The process of development in manufactures creates a constant demand for new appliances, which the skill of ordinary head-workmen and engineers is generally adequate to devise, and which, indeed, are the natural and proper outgrowth of such development. Each step forward prepares the way for the next, and each is usually taken by spontaneous trials and attempts in a hundred different places. To grant a single party a monopoly of every slight advance made, except where the exercise of invention * * * is distinctly shown, is unjust in principle and injurious in its consequences.

"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. * * *"

In the instant case it is common knowledge among machinists that the lathe cutting tool may be so used that it will not cut smoothly, but leave the metal

broken and rough. We think it was not invention to apply such knowledge to the prior art of uniting metals. "But all improvement is not invention, and entitled to protection as such. Thus to entitle it, it must be the product of some exercise of the inventive faculties, and it must involve something more than what is obvious to persons skilled in the art to which it relates." Pearce v. Mulford, 102 U.S. 112, 118, 26 L.Ed. 93; Packing Company Cases, 105 U.S. 566, 571, 26 L.Ed. 1172.

We think and hold that the change in the prior art made by the process in question was one which would occur to one skilled in such art, and was, therefore, not invention.

Reversed.