## No. 12,230.

THE KANSAS CITY, SHREVEPORT & GULF RAILWAY COMPANY VS. THE VICKSBURG, SHREVEPORT & PACIFIC RAILROAD COMPANY.

| 49  | 29   |
|-----|------|
| 51  | 824  |
| 51  | 825  |
| 51  | 1609 |
| 51  | 1613 |
| 49  | 29   |
| 112 | 915  |
| 112 | 920  |

| 49  | 29  |
|-----|-----|
| 115 | 338 |

| 49   | 29  |
|------|-----|
| f125 | 762 |

The court recognizes that property in use by a railroad company, whether acquired by expropriation or purchase, can not be expropriated by another without legislative directions, either expressly or by necessary implication; but in this case the court finds no such use. Cooley Constitutional Limitations, page 539; 1st Woods Railway Law, Sec. 229; 43 Conn. 234; 62 Mich. 564.

The necessity to the expropriating railroad corporations of the land proposed to be taken is to be understood in a reasonable sense with due regard to the needs of the corporation, hence the directness of the route, the character of the ground, facilities of construction, with other elements of judicious selection and certainly the ordinance designating the right of way of the corporations are appropriate guides exercising in their right of expropriation    Lewis on Eminent Domain, Sec. 267; 82 Ala. 297; 39th Eng. & Am. Railway Cases, p. 13.

APPEAL from the First Judicial District Court for the Parish of Caddo,   *Land, J.*

*Alexander & Blanchard* and *Thomas C. Barrett* for Plaintiff, Appellee.

*F. P. Stubbs (Harry H. Hall*, of Counsel), for Defendant, Appellant.

Argued and submitted December 1, 1896.
Opinion handed down December 14, 1896.
Rehearing refused January 4, 1897.

———

The opinion of the court was delivered by

MILLER J., The defendants appeal from the judgment, decreeing the expropriation of defendants' land for plaintiffs' use.

The petition alleges the construction in part by plaintiffs of a railroad from Kansas City to the Gulf, by way of Shreveport; that under agreement with that city, plaintiffs have established their machine shops and have agreed to build a depot within the city limits, for which purpose the company has acquired the necessary site; it is further averred that the land sought to be expropriated is necessary for the construction of the road through and from Shreveport and to connect with the company's depots, and with this averment of the necessity of the land for plaintiffs' road, there is the allegation the land is not required for the defendants' uses. The exception and answer of the defendants deny the necessity alleged for the expropriation, avers the land is part of defendants' right of way for their railroad, is necessary for the transaction of its business; and that held already under the expropriation by defendant, no second expropriation is authorized. The jury found the issues of fact in plaintiffs' favor and assessed the land, damages and betterments at three thousand three hundred and eighty-five dollars, and the judgment following the verdict decreed the payment of that amount to defendants. The plaintiff paid the amount into court, proceeded with the construction of their road over the land and defendants prosecuted this appeal. R. S. S. 1479, 1483.

The plaintiffs' road under the franchises given by the ordinance of the council of Shreveport is to be constructed from the point of access on a line connecting with the site of its depot, and continuing to the front street of the city, Commerce street, on which the company's tracks already are laid. The defendants' tracks have been laid for years on a part of the line prescribed for plaintiffs' road by the city ordinances; that is to say, between Murphy and Common streets, are laid on land acquired by defendants many years ago, and by the ordinance conferring on plaintiffs their franchise for connecting lines in Shreveport, the tracks of plaintiffs' road are required to be laid alongside of defendants' tracks, to block nine, i. e., the

depot ground of plaintiffs. This space between Murphy and Common streets awarded to the plaintiffs, is about three thousand feet, or as the verdict gives it two and sixty-one one-hundredths acres, and is a part of the larger space from seventy-five to one hundred and fifty feet wide owned by defendants. On this space defendants had but one track on which it had conducted its business for the years since it acquired the property and laid its tracks. In advance of any expropriation proceedings the plaintiffs had caused to be surveyed the space it deemed requisite, for its uses, about thirty-five feet wide on the southeast side and alongside of defendants' tracks, leaving still left to defendants considerable space on that side, and while there is some conflict of testimony, we think it is shown, that on the northwest side there is room for another track, and by filling cuts or " fills " still another track might be laid on defendants' land. As soon, however, as plaintiffs had surveyed on the southeast side, defendants commenced the construction on that side of a siding track, and afterward completed it. The plaintiffs, thereupon, proceeded to survey the space they required further east still on defendants' land and within the line prescribed by the ordinance, i. e., alongside defendants' tracks. This second line of plaintiffs required all the defendants' land on that side, and indeed, necessitated the acquisition of other land by plaintiffs. About the time of the beginning or completion of defendants' siding on the east side, there were negotiations between the parties of the land plaintiffs required, or for the lease of the siding track. The defendants demanded twenty-five thousand dollars for that the jury assessed at thirty-three hundred dollars. Plaintiffs refused to accede to the demand and resorted to this expropriation proceeding.

There is in the record a mass of testimony offered to show the feasibility of procuring land for plaintiffs' uses without taking that of defendants, and that defendants will need the land. On the other hand, there is an equal mass of testimony controverting that of defendants'.

All property is held subject to the right of eminent domain. One of the conditions of that right is the public necessity for which expropriation is demanded. 2 Kent, p. 338 *et seq.;* Cooley's Constitutional Limitations, pp. 523-530 *et seq.;* Constitution of Louisiana, Art. 156; Revised Statutes, Sec. 2376 *et seq.* No question is made that the need of land for constructing requisite connections of plain-

tiffs' railroad is a public purpose or necessity in legal contempla-
tion. The defendants' appreciation of that necessity, seems to make
the test whether or not the land of others, equally adapted as they
contend for plaintiffs' uses, can not be obtained. All the testimony
seems to concede that the locality in which this land is sought to be
taken is within the scope of prudent choice, but it is defendants'
contention that land a short distance away from their property
should be expropriated. Both roads running through the city of
Shreveport have chosen routes over the locality in controversy. We
understand the ground is " broken by chasms of hills," to use the
term in the record. While defendants' testimony is to the effect
that plaintiffs can find land as good for their purpose within, say,
two hundred feet, or a few hundred feet away from that along-
side of defendants' tracks, the testimony of plaintiffs' wit-
nesses is that to go further east or south would be to encoun-
ter deeper fills or chasms, and greater difficulties and expense of
construction. It is to be observed that defendants in making
their selection of a roadbed through the city avoided the
fills and other difficulties to which they insist plaintiffs should
submit. We have, too, on this question of the fitness of the
land for plaintiff's purpose, the ordinance of the council pre-
scribing the line alongside of defendants' tracks, and the verdict of
the jury to be deemed an approval of that line. We think, the fair
conclusion from all this, is that alongside of defendants' tracks, as
specified in the ordinance, is better suited for plaintiff's uses than
any land in the *radius* indicated by defendants' testimony. While
we have examined this phase of the controversy, it must seem diffi-
cult to maintain, as the test of expropriation, that land of others
than the proprietor should be taken Expropriation, in most in-
stances, is deemed a sacrifice by the proprietor called on to make
the surrender. If one proprietor could defeat the expropriation on
the ground that the call should be made on another, the supposed
compulsion of the law requiring private property for the public
good would be of no efficacy.

The necessity in legal contemplation that is to be the guide in se-
lecting land for an unquestioned public purpose is to be understood
in a reasonable sense. There is, of course, the prohibition of ex-
cessive appropriation or the taking of any land not within the scope
of the purpose required. Cooley's Constitutional Limitations, 539

*et seq.;* New Orleans Pacific Railway Company vs. Gay, 32 An. 471. Subject to these restrictions the law permits the expropriation of property with due regard to the wants of the expropriating company, measured by the points between which the railroad connection is to be made; the facilities for construction afforded by the ground; the directness of the route and other points naturally involved in the selection of a roadbed.   The question, then, is whether in expropriating, the taking of defendants' land is within this reasonable exercise of the power.   It is of weight on this branch of the case, that defendants, for their route through the city from Red river, chose their roadbed on the same line to the extent involved in this controversy that plaintiffs select for their road through the city.   While one road goes through the city, from the river northeast to southwest—that is the general direction, the other proceeds through the city from southwest to the river.   Each chooses for part of their lines the space under discussion enough for both tracks.   The judgment of defendants is that the City Council and the verdict of the jury all confirm the selection by plaintiffs as a judicious exercise of choice, if expropriation gives the power to take that which is reasonably required.   If to all this is added the fact that the plaintiffs can have no right of way through the city without the consent of the authorities, and seek only that prescribed by the ordinance, it seems to us that the expropriation sought conforms not only with a reasonable exercise of the power, but is constrained by the exigency of the ordinance of the Council.   If the right to expropriate the land that is needful for the public purpose carries the limitation of a prudent exercise of the right, the courts must enforce the limitation, but can apply only the tests that are suggested by a due regard to the wants of the expropriating company, and the reasonable fitness of the land to meet such wants. These tests, we think, the record furnishes in support of the expropriation demanded.

The defendants, however, claim their land is now in public use under the expropriation for that use, and they contend that no second expropriation is authorized.   We find no evidence of any expropriation by the defendants.   There is no question that this right of eminent domain extends to property already expropriated. When that purpose is announced it is simply the expression of the legislative judgment that the last public use last proposed is of

greater importance than that to which the property is at the time devoted. But as a rule of interpretation the expropriation of property in public use, whether under a previous expropriation or other mode of acquisition, will not be deemed the purpose of a legislative act unless that purpose is avowed expressly or by necessary implication. Lewis on Eminent Domain, 267 *et seq.*; 62 Michigan, p. 564. The question then is whether the land, the subject of this contro- versy, is in public use. If not, it is subject to be taken for such use the same as that of any individual. If a corporation acquires more land than it requires for its uses, the land not needed is impressed with no immunity from the exercise of that power, to which all must submit. The land involved in this case, part and a small part only of a larger space, was acquired by purchase in 1858. In all that long period the defendant has had but one single track on the land. They added another when the plaintiffs manifested their purpose to lay its tracks alongside of defendants. With neither track of defendants does this expropriation propose the least interference: The land proposed to be taken is further east and devoted to no use whatever by defendant, nor had it ever been in the half century of defendant's ownership.

There is, however, a great deal of testimony devoted to uses of the defendants for this land not exhibited in the past, nor manifest at present, but which defendants claim the future will develop. In this connection we have gone through the testimony of the negotia- tion of defendants with a railroad company seeking a connection with Shreveport. The issue of this negotiation it was hoped, the witnesses tell us, would have increased defendant's business, neces- sitating more tracks on their land, but we observe the negotiation came to nothing. Then we have dealt with that part of the record referring to negotiations by defendants with parties in Jefferson, Texas, west of Shreveport, promising an extension of defendants' line to Jefferson, and this extension the witnesses claim would have accumulated business for the road, requiring more trackage. The record shows this negotiation failed, and we note that defendants have extended the lease of their short track west of Shreveport to the company who have had that lease for years, an extension not in keeping with the Jefferson project. It is also claimed that additional land will be required for yard purposes, which we suppose means space to receive on deposit cotton or freight brought or to be car-

ried by defendant's road, but it appears that space for that purpose has been found elsewhere, and certainly no portion of the thirty-five feet sought by plaintiffs has ever been called in requisition for yard or any other purposes. Along with the testimony as to their prospective uses, we have that of other witnesses, some connected with other railroads leading to Shreveport, familiar as they claim with the requirements of defendants' road in the past and qualified to predict any such necessity apt to arise in the future. Without recapitulating it is enough that this speculative testimony as to the future needs of defendants for more land, is at least, as strong against, as for the defendants. We appreciate that in estimating the land of defendants liable to expropriation, that in actual use should not be the rigid limit, but there should be a reasonable regard for probable increased wants of the owner. But in this case we are confronted with the fact, that one track has amply served defendants for years; that it has laid another and has space left reasonably sufficient, if there is any force in testimony, for additional tracks or other purposes. With the tracks on that space, and space besides, it does seem to us difficult, on any reasonable ground of necessity for defendants' uses, to exclude plaintiffs from the thirty-five feet they seek of defendants' comparatively much larger extent of ground. It seems to us, we must accept the conclusion there is ample ground for both roads, and hence no room for one to deny the expropriation sought by the other. The right of expropriation in such case was well applied in 82 Ala. We have considered in this connection the authorities cited by defendants against demands by one corporation for the land of another company. These authorities, arrayed in great number, affirm a principle of general acceptance and may be dealt with generally. They held, in substance, that the land in public use by one corporation can not, without legislative authority, in express terms or arising from necessary implication, be taken by another corporation. There can be no controversy about that. Thus, as those authorities maintain, grave yards are shielded from expropriation. A nearer illustration to this case are the station houses or depots of a railroad company, and so again ground in use for the purposes of a seaside railroad, though not used for tracks or depots. 122 Pennsylvania State, p. 511; 63 N. Y. 326; and other similar types of authority. But here there is no such use, nor any reasonable prob-

ability of future use, if testimony is to guide us, or if possible uses can be invoked at all. An impressive fact too, on this part of the case, that seeks to uphold the alleged use by defendants, and necessity for their needs of this strip of thirty-five feet, is their offer to sell for an amount in striking contrast with that awarded by the jury. We can not resist the suggestiveness of the testimony on this point. An expropriation can not be declined merely on the ground of price to be paid. The price is left to the jury and the courts, and in this, our conclusion is, was all that defendants could reasonably ask.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed with costs.