LAND, J.
The plaintiff company sued to expropriate whatever interest the defendant company may have in a certain spur track and right of way in order to reach its terminals in the city of Shreveport.
Plaintiff company alleged that it had acquired title to the tract of land occupied in part by said spur track, which had been originally constructed as a private enterprise for the use and benefit of the Queen City Furniture Manufacturing Company, the former owner of the said tract; that the buildings of the said company were destroyed by fire more than a year before the institution of the suit; and that said spur had never been used for public purposes.
Plaintiff made part of its petition another petition in an injunction suit, in which it was alleged that the tract in question had been sold under foreclosure of special mortgages antedating the acquisition of defendant’s right of way, and that the purchaser at the judicial sale had sold said tract to the vendors of-the plaintiff.
The answer denied the right of the plaintiff to expropriate said spur track and right of way, on the ground that the same was dedicated to public use as a part of defendant’s railroad system, and also denied the necessity of the proposed expropriation on the ground that the same could be avoided by a change of the proposed location of plaintiff’s roadway.
There was a verdict and judgment in favor of the plaintiff for the strip of land, on the payment of the sum of $1,000. Defendant has appealed.
On February 3, 1905, the said furniture company mortgaged the tract in question and other lands to secure the-payment of notes aggregating $50,000. On April 7, 1905, the same company executed a mortgage on the same property to secure the payment of notes aggregating $20,000.
On May 1, 1905, the same corporation entered into an agreement with the defendant for the construction and operation of the spur track in question. There seems to have been very little use made of this spur track. The operations of the furniture factory were not successful, and the burning of the plant in 1908 put an end to the enterprise.
In February, 1908, the furniture company was placed in the hands of a receiver, and subsequently all of its property, real and personal, were sold to pay debts, including amounts due on the first and second mortgages, which antedated the contract under which the defendant claims the spur track and right of way. A. Currie purchased all the real estate, including the tract in question, known as lot 5, without any reservation. A. Currie sold to Drake and Buchanan all of lot 5 except 1.5 acres, and the said purchasers sold to the plaintiff company. From this statement it would seem that the judicial sale to pay the anterior mortgages ousted whatever title the *759 defendant may have, had to the right of way in question.
The contract of May 1, 1905, relative to said spur track, recites that it was to be, constructed and operated “for the purpose of receiving lumber, furniture, and other material entering into the manufacture of furniture and shipping of furniture from said factory”; that the furniture company was to do all the necessary grading required for said spur track, and also to furnish free of cost all the land necessary for the right of way outside of the right of way or land of the railway company, the furniture company assuming and agreeing to pay all damages to adjacent property by reason of the construction and operation of said track; that the said furniture company convey to said railway company a right of way 25 feet wide for a single track across its property, and,- in the event the railway company should remove its track therefrom, said right of way should revert to said grantor; that said track, when completed, should be used by the furniture company for the purpose of loading and shipping timber, furniture, etc., with the reservation’ that the railway company should have the right to use said track for its own business, or for the business of any other persons or shippers; that the said grantor should not convey or assign to any other party the right to use said track without the consent of the railway company; that the furniture company released the said railroad company from any and all liability for property destroyed by fire communicated by its locomotive while operating on said track, and agreed to save harmless said railroad company from any and all damages or claims for damages resulting therefrom; that, in the event the mill or other buildings or property of the furniture company be destroyed or injured by fire, it was to pay all damages caused by such fire to the property of the railroad company, or any other cars that may be injured or destroyed; that said agreement was entered into upon the representations of the furniture company that certain specific shipments of freight will be continually made from said spur or side track, on the line of the said railroad, to wit, all inbound or outbound shipments to said mill shall be routed over the line of said railroad, where its rates are as low as any other transportation line; and that, in the event of the failure of the furniture company to make such shipments as represented, then the railroad company should have the right to cancel the contract and remove its tracks.
At the date of said contract the furniture company owned several contiguous tracts of land, aggregating about 40 acres, situated on the hills abutting the bed of Silver Lake, then and now used almost exclusively for railroad purposes. The defendant had a number of tracks in Silver Lake, and the intent was to build a spur from one of these tracks to the plant of the furniture company.
The spur track was constructed pursuant to the contract between the parties, at a total cost of $3,592.94, of which $2,084.05 was paid by the furniture company for grading. The balance represented the cost of rails, ties, labor, etc., expended by the railway company. The grade of this spur track was very steep, averaging 3% per cent. Up such a grade it is not practicable for a locomotive to pull more than a few ears. The furniture company was the only industry in that vicinity. Its plant was destroyed by fire in 1908. During the year 1909 the defendant used the spur for hauling old lumber from the factory site, for which service $10 was paid. Defendant also claims that it has used the spur for hauling dirt and storing cars. As the plaintiff owns the land through which the spur runs, it is evident that it can be no longer used for the purpose of hauling dirt from the premises. The evidence shows that little or no use was made of the spur for storage purposes until *761 it was made evident that the plaintiff had purchased 'lot No. 5 for terminal purposes.
The contract, read in the light of the surrounding circumstances, shows that the spur was not intended for public use, but for the benefit of the furniture company and the railroad. The provisions of the contract relating to the use of the spur by the railroad in its own business cannot be dissevered from the main purpose of the agreement; that is to say, the transportation of material, furniture, etc., to and from said factory. This purpose precludes the use of the spur as a storage track, and it may be noted that the spur was not used for any such purpose while the factory was in existence. The destruction of the factory by fire and the forced sale of the land on which it stood rendered impossible the further exe'cution of the agreement. The contention of the defendant that by the terms of said contract it acquired an unconditional and perpetual right of way over the tract of land in question for any and all purposes is clearly untenable. The spur track was constructed at the expense of both parties; the furniture company paying the greater portion of the cost, besides furnishing the land for the right of way, and assuming or waiving all liability for damages.
A contract of this kind, for the joint benefit of the contracting parties, cannot be considered in any other light than a private enterprise. As the spur -was on the lands of the grantor and terminated at its factory, we cannot see how it could have been used by the public, which had no rights of ingress and egress over the premises.
“And the weight of authority, as well as the better reason, seems to be to the effect that lines of railroads, branches, or spurs to mines, •manufacturing establishments, and the like are a public use for which land may be condemned, where the general public have the right thereon to be served without discrimination.” Elliott on Railroads (2d Ed.) vol. 2, § 961.
If the defendant’s right of way is not in public use, it may be expropriated like any other private property. Railway Co. v. Railroad Co., 49 La. Ann. 34, 21 South. 144; Railroad Co. v. Railroad Co., 51 La. Ann. 1605, 26 South. 278.
“Property of a corporation, not devoted to a public use, is subject to the exercise of the right of eminent domain, the same as that of individuals.” 15 Cyc. 612.
The defendant’s objections to the necessity of the particular expropriation are met by the reasoning of the court on a similar state of facts in Railway Co. v. Railroad Co., 49 La. Ann. 29, 21 South. 144.
The plaintiff, as owner of the tract of land on which the spur track in question is located, cannot as a business proposition build its tracks over or under 'the spur track in question, which blocks the way to its terminus on Marshall street. Whatever interest the defendant may have in said spur track is of a private character, and must yield to the public enterprise undertaken by the plaintiff company.
Defendant’s interest in the spur track consists of its ownership of the rails, ties, etc., constituting the superstructure of the roadbed. Defendant has "no just claim to the roadbed, which was constructed at the cost of the furniture company. A fortuitous event having prevented the performance of the obligations of the contract on the part of the furniture company, the right of the defendant is restricted to a rescission of the agreement. Under the very terms of the contract it was stipulated that, in the event of the failure of the furniture company to make shipments as agreed, the railroad company should have the right to cancel the contract and remove its tracks.
Under our views of the rights of the defendant in and to the right of way in question, the allowance of damages cannot be considered as insufficient; and, on the other hand, the award cannot be disturbed, in the absence of prayer to that effect on the part of the appellee.
*763 It is therefore ordered that the judgment be affirmed, and that defendant and appeliant pay all costs of appeal.