Statement of the Case.
MONROE, J.
Plaintiff herein, alleging itself to be duly incorporated, brought suit in August of this year in the district court for the parish of Iberia for the expropriation of a right of way or crossing over a railroad belonging to defendant (relator) at a point within the city of New Iberia, and an order was made fixing the application for hearing upon the 21st of September. Shortly thereafter defendant filed an exception to the jurisdiction of the court ratione person®, alleging that Act No. 37 of 1877, whereby it was incorporated, establishes its domicile in the city of New Orleans, and provides that it shall be sued Only there, except in cases of trespass. It further alleged, in effect, that Act No. 182 of 1908, relied on by plaintiff as repealing the provisions of the act of incorporation thus referred to, does not so operate, and, if it does, is unconstitutional, for reasons stated. The exception was argued and submitted on September 19th, and the court adjourned until September 21st, when it was overruled, to which action counsel for defendant reserved a bill of exceptions. Counsel then filed an exception of no right of action, which, by consent, was taken up, instanter, considered, and overruled. They then filed exceptions of vagueness and no right and no cause of action, which were similarly disposed of. The court then announced that it would proceed with the hearing of the case upon the merits, whereupon counsel for defendant notified the court and the opposing counsel that they would apply to the Supreme Court for writs of certiorari and prohibition, and the court, accepting such notice as sufficient, ordered that further proceedings be stayed. The application was thereupon made to this court, and relator complains that the trial judge erred, not only in overruling the exception to jurisdiction, but also in overruling the other exceptions, and insists that this court should review the whole matter.
Opinion.
The petition for expropriation alleges that “the crossing in question” will not damage defendant to any extent, but that plaintiff is willing to pay therefor the sum of $200. On the other hand, in the petition. filed in this court on behalf of defendant, and verified by affidavit, it is alleged that the amount involved exceeds $2,000, and that the loss and damage to which defendant will be subjected by the expropriation far exceeds that amount. We therefore assume for the present that the ease is appealable to this court. [1] In any event, the jurisdiction ratione materia; of the trial court being undisputed, *495 and its rulings, on the exceptions of vagueness and no right and no cause of action, being interlocutory, and not such as are calculated to work irreparable injury, are properly reviewable only upon appeal from the final judgment, whether such appeal be returnable to this court or to the Court of Appeal. [2] As to the exception to jurisdiction, it is true that the trial court was as much authorized, and as much bound, to pass upon it as upon the other exceptions, and, as the judgment overruling it was also interlocutory in character, it might be said that it, too, should be reviewed only upon appeal from the final judgment. As, however, it would be an utterly vain thing for a court, without jurisdiction, and whose jurisdiction has been properly challenged, to proceed with the hearing of a case upon its merits, and would subject the litigants to useless expense and inconvenience, the law has provided a remedy in the writ of prohibition which is an order directed by an airpellate to an inferior court, forbidding the latter “to proceed further in the cause, on the ground that cognizance of the said cause does not belong to such court, but to another, or that it is not competent to decide it” (O. P. art. 84G); the question of competence depending on (1) the object or amount in dispute; (2) the person of the defendant; and (3) the place where the action is brought (C. P. art. 87). When, therefore, the competency of the respondent judge was challenged oh the grounds which have been stated, and it was held that the challenge was not well founded, a case was presented for the issuance of the writ of prohibition, provided relator’s allegations as to its immunity from suit, elsewhere than in New Orleans, are well founded in fact and in law.
There is no doubt that section 12 of Act No. 37 of 1877, which is relator's legislative charter, establishes relator’s domicile in the city of New Orleans and further provides that relator shall not be sued elsewhere, except in cases of trespass. [3] The learned 'respondent, in whose behalf the counsel representing the plaintiff' have made return to the rule nisi issued from this court, says that relator waived its right to the relief here sought by filing the exceptions of vagueness and no right or cause of action, after the overruling of its exception to the jurisdiction and without previously giving the notice, which it subsequently gave, of the intention to apply to this court. We do not concur in that view. Defendant excepted to the jurisdiction and reserved its bill to the overruling of the exception. The court was then ready to proceed with the trial, whereupon defendant filed its other exceptions, and, after argument, they were overruled. If defendant had, then, put the case at issue by filing an answer, and had proceeded, without further objection, with the trial, and a judgment had been rendered on the merits, it might very well have been said that, having a remedy by appeal, and the trial court having no further function to discharge, save to grant the appeal, the writ of prohibition would not issue. But the purpose and effect (by the considerate action of the respondent) of the notice given by defendant immediately upon the overruling of its exceptions was to prevent the court from proceeding with the trial of a cause, of which, according to defendant’s view, it (the court) was without jurisdiction. It is true that defendant might in the same way have relieved itself of the filing and argument of the later exceptions, but that it did not do so is not a sufficient reason for denying the right, as, and when exercised, of relieving itself of the trial on the merits. The cases of State ex rel. Singer v. McGuire, Sheriff, 40 La. Ann. 378, 4 South. 222, and State ex rel. Duthoo v. Judge, 45 La. Ann. 214, 11 South. 935, to which we are referred, are inapplicable. In the case of State ex rel. Haus v. Judge, 36 La. Ann. 768, it appeared that the relator pleaded to the jurisdiction of one of the divi *497 sions of the civil district court to deal with him as tutor, on the ground that the ease had not been properly allotted, and that, after his plea had been overruled, he filed an answer, praying for a trial by jury, which action was held to be' a waiver of his right to invoke the writ of prohibition, though the opinion of this court to that effect concludes with the statement: “He cannot be said to have thereby abandoned the plea itself.” In other words, he could not be heard to invoke the action of this court whilst at the same time praying that his case be tried in the district court.
[4] The learned respondent further says that section 12 of Act No. 37 of 1877 is repealed by Act No. 182 of 1908, and that the repeal is constitutional. We do not find that for the purposes of this case such repeal was intended or effected. The act of 190S is entitled:
“An act to amend and re-enact section 1 of Act No. 93 of 1888, entitled [and then follows the title of the act of 1888] and to repeal all general and special laws in conflict therewith.”
The act of 1888, referred to, is entitled:
“An act requiring carriers to pay, at the point of delivery, for all freight they may fail, refuse, or neglect to deliver, and for all damages arising from such failure and for all damages done to such freight while in transit, and conferring upon courts, at the point of delivery, or the courts of domicile of the public carrier, jurisdiction, at the option of the party bringing the suit, in all suits for the recovery of freight that they may fail, refuse or neglect to deliver, or for damages arising from such failure, refusal of neglect, or for damages done to freight while in transit.”
Section 1 of the act conforms to the title, and concludes:
“Provided, that suit shall not be instituted under 30 days after demand; and, provided, further, that no charge shall be made for freight not actually delivered.”
Section 2 reads:
“That all laws or parts of laws in conflict with this act be and the same are hereby repealed.”
The act of 1908 is identical in language with that of 1888, save in the following particulars, to wit: The provisos with which section 1 of the act of 1888 conclude are omitted, and section 2- reads:
“That all general and special laws or parts of laws in conflict with this act and particularly section 12 of Act No. 37 of the Regular Session of 1877 be and the same are hereby repealed.”
It will thus be seen that the object of both acts, and the only object, as declared or referred to in either of the titles, is to authorize the bringing of suits against carriers, either at the points of delivery or at the domiciles of the carriers, for the recovery of freight intrusted to them, or for damages for the nondelivery of such freight, and to repeal all laws in conflict with the law thus enacted for the accomplishment of that object. Conceding that the repealing clause of the act of 1908 applies to section 12 of Act No. 37 of 1877, in so far as that section grants defendant immunity, save at its domicile, from such suits as the acts authorize to be brought elsewhere, that clause has no application to the section in question, in so far as it grants such immunity with respect to other suits, since in that respect there is no conflict between said section and the act to which the clause refers, and, although the said clause in the act of 1908 purports to repeal said section in toto, the only object declared by the title is “to repeal all general and special laws in conflict therewith” (i. e., with the act of 1888, as amended and re-enacted), and the text of the act cannot be held to be broader than its title without bringing it in conflict with article 29 of the Constitution of 1879.
It may he remarked in conclusion upon this point that, construing the act of 1888 with reference to section 12 of the act of 1877, this court has held that, the one statute being general and the other special, they were not repugnant, and that .the later did not repeal the earlier. Hayes v. Morgan’s La. & Tex. R. R. & S. S. Co., 117 La. 593, 42 South. 150. Whether the act of *499 1908 in so far as it applies to section 12 of the act of 1877 contravenes article 166 of the state Constitution, or paragraph 10, art. 1, of the federal Constitution, is a question which need not be here considered, since, in any event, it can only apply with reference to suits for the recovery of freight or for damages for the loss of freight, and this is not a suit of that character.
[5] The important question which remains is, Should the language of section 12 of the act of 1877 be confined in its application to the ordinary litigation to which relator, as a railroad company, might expect to be subjected, or should it be construed to apply to any and all litigation to which relator may be made a party defendant, save actions for trespass. The learned counsel for relator hold, as we understand them, that the immunity accorded by the statute extends to all litigation in which relator may be placed in the position of a defendant, and certainly extends to the suit brought by plaintiff. Considering the question at issue from that point of view, it will be conceded that the immunity is an extraordinary one, peculiar to the relator, and not enjoyed by any other corporation or by the citizens of the state generally of common right. It will also perhaps be conceded that the words of a statute are to be taken as commonly understood, and that a court in interpreting them may consider the statute as a whole, and seek aid in the surrounding conditions of fact and law. Turning to the statute here in question, we find that relator was authorized to do a great many things, and, among others, to own and operate a railroad, then completed, between New Orleans and Morgan City; to extend such road to Texas; to build and maintain branch roads into different parishes along and off the main line; to own and operate steamships and other vessels; to borrow money and to mortgage and pledge its property; to purchase and lease property. The railroad, as it existed when the company was created, ran through a number of parishes and municipalities, and, as was contemplated, its main line and branches have since been extended through, or into, a great many more. Under the circumstances as thus stated, it can readily be understood that it would be placed at a serious disadvantage if it were compelled to litigate in any and all of such parishes and municipalities, and before any and all of the courts therein, with respect to any and all of the matters of dispute arising in the ordinary course of its business and upon any part of its line or lines; and, although the Code of Practice in providing that in such matters — that is to say, in ordinary matters, such as are not excepted by express provision of law or by necessity — one should be sued before the judge of his domicile, contemplated the corporation as well as the individual, it is not surprising that relator should have endeavored to make assurance doubly sure by including a specific provision upon the subject in its charter, to which it might appeal, as it now does, as to a contract protected by the paramount law. That provision reads as follows:
“Sec. 12. The domicile of the company shall be the city of New Orleans and citation shall be served, there, on the president of the company, or in his absence, on the secretary, and the company shall be sued only at its domicile, except in .actions of trespass, when the company may be sued in the parish in which the trespass has been committed.”
The language used is certainly very broad, and, taken by itself, is no doubt susceptible of the interpretation that relator’s counsel now place on it, to wit, that relator can be made a party defendant in no suit or proceeding, other than an action for trespass, save in a court of its domicile. There were, however, at the time the act of 1877 was passed, and there are now, cases in which by necessity and by law the jurisdiction of *501 the court before which they are brought cannot be determined by the domicile of a particular individual. Thus an action for the partition of real estate must be brought within the jurisdiction where the property is situated; for, where the owners reside in different jurisdictions, no one of them can be compelled to answer at the domicile of another. An action to revive a judgment must be brought before the court by which the judgment was rendered. An action in rem must be brought where the res is found. Will it be said, then, that in granting the immunity accorded to relator it was intended by the General Assembly to deny to any citizens who may own property in common with relator in a parish other than that of Orleans the right to a partition of such property, or to deny to any citizen who may have obtained judgment against relator (say, by reason of its failure to assert its immunity) in another parish the right to revive his judgment, or that a citizen may not in another parish assert his right with respect to property, there situated, because it may be necessary that relator should be made a party to the proceeding?
The Code of Practice provides that a provisional seizure may be ordered (among other cases) when a lessor prays for the seizure of property upon the premises leased by him; and when a person employed on board of a ship or water craft, navigating in this state, or a person who has furnished material or made repairs to such craft, prays that it may be seized and detained until he is paid, would it be reasonable to suppose that the General Assembly intended to deny that right by the grant to relator, contained, as it is, in an act which has no repealing clause?
Under the Constitution of 1S68, which was in force when' the act of 1877 was passed, the payment of taxes could be, and in many cases could only be, enforced by suit, and then, as now, parishes and municipalities had the right to proceed in the courts for the enforcement of their ordinances; but, if the view of the relator be correct, the parish of Sabine or the city of New Iberia could haAre proceeded against relator, for the purposes mentioned, only in the city of New Orleans.
The Civil Code declares that:
“The first law of society being that the general interest shall be preferred to that of the individual, every individual who possesses, under the protection of the laws, any particular prop-’ erty, is tacitly subjected to the obligation of yielding it to the community, wherever it becomes necessary for general use.”
And that:
“If the owner of a thing, necessary for the general use, refuses to yield it, or demands an exorbitant price, he may be divested of the property by the authority of law,” a fair price being paid.
It further declares that, when certain public service corporations (and both relator and plaintiff are among those named) cannot agree with the owner of land required by them, they may apply to the judge of the court where the land is situated, who is required to order the summoning of a jury of freeholders, “residents of the parish where the land lies,” who are to determine the value of the land and the damage which may be sustained by the owner by reason of its expropriation. If the owner be present, he is to be cited. If he be absent or unknown a curator ad hoc is to be áppointed to represent him and “all judgments directing the expropriation of lands to corporations shall be valid against all persons, including married women, minors or persons interdicted.” C. C. art. 2626 et seq.
Under our law, therefore, as in most of the other states, the proceeding to condemn or expropriate property in the public interest is essentially a proceeding in rem, and not a suit in the ordinary sense.
“Under most of the statutes,” says a late authority, “such proceedings are essentially proceedings in rem, although the methods by which the power of eminent domain is to be exercised *503 vary according to circumstances, and according to the provisions of the different state Legislatures. The proceeding is not according to the course of the common law, but is a special proceeding,” etc. 15 Cyc. p. 805 et seq.; 22 Cyc. p. 1102, note 61.
Our law upon the subject and the reason upon which it is founded render it necessary that a proceeding for the expropriation of property should be conducted at the place where the property which is to be valued and condemned is situated, and it is incredible that the General Assembly, whilst conferring upon relator the power to expropriate the property of others by a proceeding so conducted, should have intended to deny to the state, and to corporations authorized by the state, the right, in the same manner, or at all, to expropriate the property of the relator. The ease of Gossin v. Williams, 36 La. Ann. 186 (decided prior to the passage of Act No. 93 of 1888), presented the question whether defendant could be sued elsewhere than at its domicile for damages for freight.
The case of Balt. & O. Tel. Co. v. Morgan’s L. & T. R. S. S. Co., 37 La. Ann. 883, presented the question whether, in view of the fact that plaintiff was seeking to expropriate a right of way for a telegraph line from New Orleans to Lafayette the proceeding was properly brought in New Orleans. The case of St. Julien v. Morgan’s L. & T. R. S. S. Co., 39 La. Ann. 1064, 3 South. 2S0, presented the question whether an action for damages not arising from trespass could be brought against defendant in a parish other than that of its domicile. The case of Payne v. Morgan’s L. & T. R. S. S. Co., 43 La. Ann. 981, 10 South. 10, presented the same question. In each of the cases mentioned, and in others besides, this court has referred to section 12 of relator’s charter, but what was said in regard to it was so said in connection' with and for the purposes of the question to be decided, and cannot, with any propriety, be wrenched away from its surroundings, and applied in this case to the decision of a totally different question.
Returning to that question and confining ourselves to it, our conclusion is that section 12 of Act No. 37 of 1877, in providing that defendant “shall be sued only at its domicile, except in actions of trespass,” was not intended to prohibit the institution of proceedings which are not ordinary suits, but are, essentially, proceedings in rem, in parishes other than that of defendant’s domicile, for the expropriation of property there situated, and of which defendant may be the owner.
For the reasons thus assigned, it .is ordered, adjudged, and decreed that the order heretofore made be set aside, that relator’s demands be rejected, and that this proceeding be dismissed, at its cost.