156 So.2d 297 (1963)
UNITED GAS PIPE LINE COMPANY
v.
NEW ORLEANS TERMINAL COMPANY.
No. 1137.
Court of Appeal of Louisiana, Fourth Circuit.
July 1, 1963.
Rehearings Denied October 2, 1963.
*299 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, McDonald, Buchler & Carr, Metairie, Hargrove, Guyton & Van Hook, Shreveport, Ernest A. Carrere, Jr., Harold A. Buchler, Metairie, John T. Guyton, and Ray A. Barlow, Shreveport, for plaintiff and appellee.
Phelps, Dunbar, Marks, Claverie & Sims, Sumter D. Marks, Jr., Ashton Phelps and Charles M. Lanier, New Orleans, for defendant and appellant.
Before McBRIDE, YARRUT and CHASEZ, JJ.
McBRIDE, Judge.
This is a devolutive appeal (see LSA-C.C. art. 2634) taken by defendant from a judgment of the Twenty-fourth Judicial District Court for the Parish of Jefferson permitting plaintiff, a corporation created for the piping and marketing of natural gas for public consumption (see LSA-R.S. 19:2[7]), to expropriate a 30' right of way, together with a parallel and adjoining 20' temporary servitude, for the construction and maintenance of a high pressure 30" gas pipeline (to be buried at least 6 feet below the surface) along and through the southern and eastern perimeters of certain land owned by defendant. The temporary servitude is now extinct by virtue of the completion of the pipeline. The judgment awarded defendant $98,450 for the right of way and temporary servitude and "all normal damages occasioned by the construction of said pipeline." Defendant's claim for severance damages allegedly sustained by its property outside the right of way was rejected.
Defendant's land, an area in excess of 40 undeveloped acres, situated within a developed urban section of the Parish of Jefferson, is bisected by Harlem Avenue which runs north-south, and is bounded east by LaBarre Road and south by the right of way of Illinois Central Railroad which runs in an east-west direction. Defendant leases 4.298 acres to the Parish of Jefferson for playground and recreational purposes under an unrecorded contract which is subject to termination by either party by the giving of a thirty-day written notice. The right of way and servitude expropriated in no way encroach on the leased portion of the subject land. There is testimony, however, to the effect that a baseball diamond is located on the right of way, but the land utilized therefor is not covered by lease and the Parish of Jefferson has no right of occupancy save by sufferance of defendant.
(1) Appellant argues that the trial judge erred in overruling its exception of no right and/or cause of action, or in not holding that plaintiff had not the right or power to expropriate the portion of the land constituting the playground.
The exception is without merit; appellant relies on the principle of law that land in public use by one corporation cannot, without legislative authority, be taken by another corporation, but such finds no application whatsoever in the instant case. No public property is involved. Defendant has made no dedication of any of the land to the public, and has never manifested any intent to make a dedication. It seems to us the provision of the lease providing for a thirty-day cancellation thereof would dispel any idea of such intent. Whether there has been an intent to dedicate property to public use is a question of fact which may be inferred only from acts of acquiescence from the owner that would exclude every hypothesis but that of dedication. Mere silence on the owner's part and failure to protest against the use of land by the public does not in law amount to an assent to a dedication to public use. Donaldson's Heirs v. City of New Orleans, 166 La. 1059, 118 So. 134; Bomar v. City of Baton Rouge, 162 La. 342, 110 So. 497; DeGrilleau *300 v. Frawley, 48 La.Ann. 184, 19 So. 151; Torres v. Falgoust, 37 La.Ann. 497.
(2) Appellant reurges its exception of nonjoinder of an indispensable party defendant, contending that the Parish of Jefferson should have been made party to the suit by reason of its status as defendant's lessee. It is contended that the parish, as a public body performing public functions, should be accorded an opportunity to be heard and present defenses. The trial judge correctly held that defendant's tenant, the Parish of Jefferson, is not an indispensable party.
Firstly, plaintiff was not bound in seeking the identity of its defendants to look further than the public records on which it had the absolute right to place reliance. All contracts affecting immovable property not recorded in the manner prescribed by law shall be utterly null and void, except between the parties thereto. LSA-C.C. art. 2266. A plaintiff in an expropriation suit in the naming of parties defendant need not implead a lessee under an unrecorded lease who might otherwise have been a necessary party. City of Shreveport v. Kansas City, S. & G. Ry. Co., 184 La. 473, 166 So. 471. Secondly, under well-established jurisprudence, the only necessary parties defendant in expropriation proceedings are the owners of the property. In holding a lessee not to be a necessary party, the Supreme Court in City of Shreveport v. Kansas City, S. & G. Ry. Co., 181 La. 458, 159 So. 715, said:
"* * * no one except the owner need be made a party defendant * *. This is because these proceedings contemplate forced alienations of property and involve title to real estate. No one can give title to real estate except the owner, and inasmuch as the purpose of an expropriation proceeding is to compel him to yield title, he is the sole necessary party defendant. Suits to condemn or expropriate property for public use or in the public interest are proceedings in rem, proceedings against the property itself. Iberia, etc., Ry. Co. v. Morgan's Louisiana & Texas R. & S. S. Co., 129 La. 492, 502, 56 So. 417. The owner of the property and he alone has authority to speak in defense of an action to force alienation."
See also: Tennessee Gas Transmission Co. v. Thatcher, D.C., 84 F.Supp. 344; State of Louisiana, through Department of Highways v. Schnitt, 238 La. 1069, 117 So. 2d 595; State of Louisiana Through Department of Highways v. Ferris, 227 La. 13, 78 So.2d 493; State of Louisiana, through the Department of Highways v. D. H. Sanders Realty Company, Inc., La.App., 145 So.2d 584.
From Nichols on Eminent Domain, Vol. 2 (3rd Ed. 1950), § 5.23(7), at page 46, we quote:
"To entitle a person having a right of occupancy of real estate to recover compensation when the land is taken, he must have an actual estate or interest in the soil. * * *
"Mere occupancy, unaccompanied by any claim of ownership, is not in and of itself an estate or interest in land sufficient to form the basis of a claim for damages when the land so occupied is taken by eminent domain. Thus a trespasser is not entitled to compensation, even if he has erected a building upon the land * * *."
(3) Appellant contends that plaintiff's selection of the location of the right of way was arbitrary and capricious and the trial judge erred in not so holding.
Appellant refers us to the testimony of its expert witness, Earl Stanley Dobbs, an engineer with experience in the locating, designing, and planning of natural gas transmission lines. Appellee objected to the competency of the witness as an expert on the ground that his experience did not extend to natural gas transmission lines as large as the one plaintiff proposed to install. Appellee also objected to the *301 relevancy and materiality of the testimony. The judge correctly overruled both objections. It may be that Mr. Dobbs's inexperience with large transmission lines might possibly detract from the probative value of his testimony but would not affect his competency. We fail to understand why the testimony is not relevant and material.
Mr. Dobbs suggested seven alternative routes which he thought would be more advantageous and preferable, pointing out that monetary savings would result and the land would be less affected by the utilization of any suggested route. There is no need for detailing the testimony except to say Mr. Dobbs thought it would be desirable to utilize existing pipeline routes and public thoroughfares, to consolidate all facilities as near as practicable, to consider the cost of the land, and to avoid, if possible, the encroachment upon potential industrial or commercial sites.
Appellant in its brief makes the following argument:
"* * * What appellant is attempting to do in this case is to require appellee to abide by those sound principles of land management, which should be applicable in all urban areas, so that all might live in greater harmony. It takes no student of geography to know that land is fast become a scarce commodity and that in the metropolitan New Orleans area, this scarcity has already become acute. This acute shortage of desirable land is nowhere more manifest than in the field of industrial real estate. These are facts of which the Court may take cognizance and which should require no further elaboration.
"Appellee is no stranger to the New Orleans area and should be well acquainted with its problems. As noted, it already has two pipelines in the vicinity of the subject property, both of which have adverse effect on the property's desirability and accessibility."
The court is not concerned with property management; rather, it seems to us, the feasibility and desirability of the proposed pipeline should be considered from the standpoint of sound engineering principles and what would best serve the purposes for which the right of way is sought.
In determining the feasibility, reasonableness and desirability of the route chosen, we are impressed by the testimony of L. C. Poindexter, the Chief Engineer who is charged with the general administration of all of plaintiff's engineering and construction. Plaintiff operates approximately 10,000 miles of pipeline. Mr. Poindexter explained that the reason for constructing the proposed line is to reinforce the supply of natural gas to the City of New Orleans and to the expanding residential and other users in the Parish of Jefferson. It was pointed out by the witness that one of the most critical considerations was the matter of bringing the line across the Mississippi River at a determined point from its intake source in the Paradis Oil Field, as the U. S. Engineers, the levee boards, the Department of Public Works and the State Highway Department all have rather stringent specifications and regulations which had to be complied with, and that the line would then be run along Severn Avenue to the right of way of the Illinois Central Railroad and from thence along the southern and eastern perimeters of defendant's property, terminating at a point near the intersection of LaBarre Road and the L. & A. and K. C. S. railroad tracks. He believed the proposed route was the most suitable and gave reasons to support his assertion which we deem sufficient. Mr. Poindexter stated that none of the alternative routes suggested by Mr. Dobbs were, from either an engineering or economic standpoint, as desirable and feasible as the route plaintiff had selected.
Counsel for appellant called for the production and filing in the record of any data which plaintiff had reduced to writing *302 regarding the consideration of alternative routes. Plaintiff was unable to locate any such written memoranda or reports in its records, and, hence, could not meet the call. Because a record of the studies and research made by plaintiff's engineers with reference to the location of the proposed pipeline is not to be found to exist in written form would not militate against or detract from the weight of plaintiff's evidence. From our examination of the record, no circumstance remotely indicates that the route selected would not best serve the gas-consuming public in New Orleans and in the Parish of Jefferson, and we can find nothing in the evidence to show that the action in routing the pipeline as proposed would not be in accord with accepted engineering standards or is or was in any way arbitrary, capricious, unreasonable, or in bad faith.
In Central Louisiana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co., La.App., 131 So.2d 369, our brothers of the First Circuit summed up the pertinent jurisprudence thus:
"Regarding the general subject matter of expropriation the jurisprudence of this state has evolved certain fundamental concepts and rules which have been repeated on innumerable occasions. One such cardinal principle is that in the location of rights-of-way considerable discretion is vested in the expropriating authority and the courts will not disturb or interfere with the exercise thereof in the absence of fraud, bad faith or conduct or practices amounting to an abuse of the privilege. 18 Am.Jur. Eminent Domain, Page 735, Section 108; Kansas City, S. & G. Ry. Co. v. Vicksburg, S. & P. R. Co., 49 La.Ann. 29, 21 So. 144; Fuselier v. Police Jury of Parish of Iberia, 109 La. 551, 33 So. 597; Board of Levee Com'rs, Orleans Levee Dist. v. Jackson's Estate, 113 La. 124, 36 So. 912; Louisiana & A. Ry. Co. v. Louisiana Ry. & Nav. Co., 125 La. 756, 51 So. 712; Board of Com'rs of Tensas Basin Levee Dist. v. Franklin, 219 La. 859, 54 So.2d 125; City of Westwego v. Marrero Land & Improvement Ass'n, 221 La. 564, 59 So. 2d 885; Greater Baton Rouge Port Commission v. Watson, 224 La. 136, 68 So.2d 901; Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527, 65 A.L.R. 488; City of Charlotte v. Heath, 226 N.C. 750, 40 S.E.2d 600, 169 A.L.R. 569; Johnson v. Consolidated Gas, Electric Light & Power Co., 187 Md. 454, 50 A. 2d 918, 170 A.L.R. 709."
In Orleans & J. Ry. Co. v. Jefferson & L. P. Ry. Co., 51 La.Ann. 1605, 26 So. 278, the Supreme Court, quoting from Kansas City, S. & G. Ry. Co. v. Vicksburg, S. & P. R. Co., 49 La.Ann. 29, 32, 21 So. 144, said:
"* * * If one proprietor could defeat the expropriation on the ground that the call should be made on another, the supposed compulsion of the law requiring private property for the public good would be of no efficacy."
From the syllabus of Louisiana & A. Ry. Co. v. Louisiana Ry. & Navigation Co., 125 La. 756, 51 So. 712, we quote:
"The necessity for the exercise of the right of eminent domain must be understood in a reasonable sense, with due regard to the needs of the plaintiff corporation and all the elements of judicious selection. The objection that other property should be taken furnishes no test for the necessity for expropriation in ordinary cases."
In Kansas City, S. & G. Ry. Co. v. Vicksburg, S. & P. R. Co., 49 La.Ann. 29, 21 So. 144, we find:
"* * * The defendant's appreciation of that necessity seems to make the test whether or not the land of others, equally adapted, as it contends, for plaintiff's uses, cannot be obtained. * * *
"While we have examined this phase of the controversy, it must seem difficult to maintain, as the test of expropriation, *303 that lands of others than the proprietor should be taken. Expropriation, in most instances, is deemed a sacrifice by the proprietor called on to make the surrender. If one proprietor could defeat the expropriation on the ground that the call should be made on another, the supposed compulsion of the law requiring private property for the public good would be of no efficacy. The necessity, in legal contemplation, that is to be the guide in selecting land for an unquestioned public purpose, is to be understood in a reasonable sense. * * *"
(4) Appellant argues that the trial judge should have awarded an additional sum for one year's occupancy of the temporary servitude. Appellant claims $7,001.28 therefor. However, Mr. Lemarie, appellant's real estate expert, testified that a fair valuation of the use of the servitude for the year would be $4,345.85.
After carefully reading the judgment, our opinion is that the amount awarded defendant makes provision for plaintiff's use of the temporary servitude. The judgment condemns plaintiff to pay defendant $98,450 "for the said right of way and servitude * * *"
The recitals of the judgment considered in the light of the testimony of the three expert realtors demonstrate that the trial judge intended to and did award defendant compensation for the use of the temporary servitude. Messrs. Carrere and Derbes, experts for plaintiff, fixed the value of the right of way and the servitude at $89,340 and $71,472.25 respectively. Defendant's expert, Mr. Lemarie, thought the right of way and the use of the servitude for one year would be worth a total of $86,392.94. Under the judgment defendant recovered $98,450.
Appellant's most serious complaint with respect to the amount awarded concerns the failure of the trial judge to permit the recovery of severance or consequential damages. As before stated, the judgment specifically rejects the claim therefor.
Plaintiff's expert witnesses testified that no severance damages would be sustained by that part of the property outside the limits of the proposed right of way, while, on the other hand, Mr. Lemarie, defendant's expert, stated that the remainder of the property surely would be damaged by virtue of the existence of the pipeline on the tract of land. This witness pointed out that pipelines which are capable of exploding create recognized hazards and he thought:
"* * * that on the remainder of the property, if this thirty-inch line goes in; it is going to have a very deterrent effect on the balance of the property. Not only a psychological effect, but an actual and a real deterrent.
"I think the property immediately adjoining the servitude, for a distance of a hundred feet back, all along the I. C. right-of-way, as well as along LaBarre Road, would suffer to the extent of twenty-five cents per square foot.
"The balance of the property would suffer to the extent of ten cents a square foot."
Our Supreme Court has consistently held that severance damages are due to an owner whose property is to be crossed by a high pressure gasoline pipeline because of the dangerous potentialities thereof. In Texas Pipe Line Co. v. National Gasoline Co. of Louisiana, Inc., 203 La. 787, 14 So.2d 636, the Court had evidence before it that it would be difficult to persuade people to buy lots in a residential subdivision adjoining or in close proximity to pipelines. The Court said:
"* * * The argument for the plaintiff that there is no real danger or reason for such fear has no force against the fact that the fear exists *304 and is unavoidable. The fear of danger in some cases is as bad as the danger itselfit is a condition not a theory."
In Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260, the Supreme Court held that severance damages, if proven, should be awarded to the owners of two tracts of potential industrial realty that would be crossed diagonally by a 16" high pressure pipeline which would transport gasoline. The Court, on second rehearing, said:
"* * * This pipeline is potentially dangerous. Leaks are expected to occur in the line from time to time, and when leaks do occur explosions may result. The record shows that the pipe extending across these two tracts, for instance, will hold approximately 48,000 gallons of high octane gasoline, and that it would be dangerous to locate any structure or industry over the line or in its immediate vicinity. For these reasons we are convinced that defendants have suffered damages to their remaining property because of the expropriation.
* * * * * *
"In the instant case we think the evidence shows that a real danger exists, and for this reason if for no other it is clear to us that the value of the adjacent land has depreciated and that defendants here have suffered severance damages. Although plaintiff's experts testified at the trial that defendants' remaining property was not injured by the pipeline, they offered no reasons for this opinion, and therefore it remains only a conclusion on their part and is not impressive."
Other cases holding that property would suffer some diminution in value as a result of being situated adjacent to or in close proximity to gas or gasoline pipelines: Texas Gas Transmission Corp. v. Broussard, 234 La. 751, 101 So.2d 657; Coastal Transmission Corp. v. LeJeune, La.App., 148 So.2d 111; Trunk Line Gas Company, La.App., 138 So.2d 424; Interstate Oil Pipe Line Company v. Friedman, La.App., 137 So.2d 700; Tennessee Gas Transmission Co. v. Primeaux, La.App., 100 So.2d 917; United Gas Pipeline Company v. Nezat, La.App., 136 So.2d 76.
Appellee argues that in all of the cases wherein severance damages were allowed because of "potential danger," the pipeline bisected the affected land into two completely separate tracts and for that reason such cases must be distinguished from the instant case in which the right of way is located along the edge of defendant's property. We do not think that there is any less danger of explosion or less likelihood of damage because the pipeline in the instant case runs along the perimeter of the property. The record shows that the property could best serve for commercial or industrial purposes, and this being so, undoubtedly buildings or installations will sooner or later be erected thereon to the edge of the right of way, and if an explosion should occur, it is manifest that damage would be sustained by the adjoining owner.
Contrary to appellee's contention that the right of way bisected the property in all of the cases in which severance damages were allowed for "potential danger," we find that in Texas Pipe Line Co. v. National Gasoline Co. of Louisiana, Inc., supra, the gasoline pipeline traversed the edge of defendant's property for a distance of 1,662 feet.
Appellee also contends that fears of the owners of damage by explosion should be allayed by reason of the fact that the record shows there would be no increase in the rates for fire and extended coverage insurance on buildings and other improvements constructed on the property adjacent to the right of way. It does not appear, and we do not believe, that individuals would be any the less fearful of the likelihood of or the consequences of an explosion merely because they would be able to secure insurance coverage at the normal rate. *305 Regardless of the availability of insurance protection, the existence of the dangerous potential might depreciate the value of the property.
In addition to the proven market value of property expropriated, the owner is entitled to be compensated for damages sustained by his remaining lands, if any, caused by the taking. Art. I, § 2, Const.1921, LSA; Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1; Texas Pipe Line Co. v. Barbe, supra. The proper measure of severance damages resulting from the expropriation of property rights is the difference between the proven market value thereof immediately before and immediately after the expropriation. State of Louisiana, Through Department of Highways v. Central Realty Investment Company, Inc., 238 La. 965, 117 So.2d 261; Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354; Texas Pipe Line Co. v. Barbe, supra. Severance damages to be recoverable must be reasonably prospective; they cannot be recovered when they are merely anticipated or so remote as to be characterized as speculative. Louisiana Highway Commission v. Lasseigne, 177 La. 440, 148 So. 672.
Mr. Lemarie's opinion was that the property immediately adjoining the servitude for a distance of 100 feet back, both along the I.C. right of way and LaBarre Road would suffer to the extent of 25 cents (or 20%) per square foot and that the balance of the property would suffer to the extent of 10 cents (or 8%) per square foot, according to which formula he estimated the aggregate damage to be $203,866.05. But Mr. Lemarie frankly admitted that he knew of no tract of land in the area of defendant's property upon which there is located a natural gas transmission line sold as an industrial site which had depreciated in value by reason of the location of the pipeline on the property. We cannot accept Mr. Lemarie's more or less arbitrary establishment of the damage; moreover, the amount appears excessive.
In Texas Pipe Line Co. v. Barbe, supra (on second rehearing), the trial judge reasoned that the owner may have suffered consequential damages to his 200 acre tract of 15 percent of the difference between its value ($1,000) for industrial purposes and its value for agricultural purposes ($250), and that since 200 acres were involved, he awarded the owner $22,500. The Court did not approve of the percentage method used by the trial judge and thought the award to be excessive. The case was ultimately remanded to the lower court in order to grant defendants the opportunity to establish by competent evidence the difference between the market value immediately before and immediately after the expropriation. As to the proof required, the Court remarked:
"* * * To make ourselves perfectly clear, defendants must effectively show the market value of each tract immediately before and immediately after the expropriation in order to establish the quantum of their severance damages."
(5), (6) Appellant is making claim for $100,000 to compensate it for encasing plaintiff's pipeline so as to provide for a sufficient number of rail crossings from the Illinois Central Railroad over the right of way and onto appellant's remaining property.
Appellant produced testimony to the effect that the cost of running spur tracks from the Illinois Central Railroad across the pipeline right of way into the subject property would be approximately $80 per foot and that the cost would be somewhere between $7,000 and $17,000 just for providing the proper foundation for the casement of the pipeline at the point the track crosses.
Appellant has no plans for constructing any spur track facilities at any time within the foreseeable future, and there is no way of knowing how many industries, if any, will ultimately locate on the property. The *306 land has been in defendant's ownership for more than fifty years and no plans to subdivide have ever been formulated. We have no idea as to when a subdivision will be made. No one could tell with any degree of accuracy or certainty at this time whether more than one spur track would be required, as it may be that defendant will sell the property to one concern, even assuming that such concern would connect the spur track with the Illinois Central Railroad trunk line and not to the New Orleans Terminal Company's tracks along the northwest portion of the property or to the L. R. & N. tracks on the north side. It appears to us that the special damages which appellant claims for encasing the pipeline to permit the entry into the property of spur tracks in the absence of a showing of the necessity or the number thereof are purely speculative, conjectural and remote and should not be allowed.
Aside from this, Mr. Lemarie believes that "a parallel track along the I.C. Railroad" would be sufficient to supply any industries on the property, and that it would be "ideal" to have one spur track from the Illinois Central Railroad and route the same parallel to the servitude which, of course, would require but the one rail crossing of the pipeline. It seems to us that plaintiff has furnished such encasement of its pipeline as is necessary.
The plaintiff consented that the trial court's judgment would provide that upon written notice by defendant to plaintiff given not more than ten days after the date of the judgment, plaintiff shall encase its pipeline during the construction thereof at three locations selected by defendant according to the usual specifications prescribed for railroad crossings of pipelines. We are told that the encasement can be more readily accomplished during construction of the line. The judgment specified that each encasement shall be of sufficient length to accommodate a spur track across plaintiff's servitude. Pursuant to said provisions, the pipeline has been encased at three places which were designated by defendant. Thus, at three locations along the pipeline spur tracks may now be run by defendant from the Illinois Central Railroad into its property without cost to itself for the casements at said points.
The effect of the judgment with reference to the encasing of the pipeline was to impose affirmative duties on plaintiff. Such affirmative duties have been imposed on expropriators by the Supreme Court in several cases, e.g., State through Department of Highways v. Laird, 219 La. 567, 53 So. 2d 674 (provide access to frontage of property by service road and by approach over culvert pipe); Taylor v. New Orleans Terminal Co., 126 La. 420, 52 So. 562 (fence and drain property and construct crossing thereon); Colorado Southern, N. O. & P. R. Co. v. Boagni, 118 La. 268, 42 So. 932 (install culverts and cattle guards); Kansas City, S. & G. Ry. Co. v. Louisiana W. R. Co., 116 La. 178, 40 So. 627 (construct and maintain crossings).
Appellant takes the position that the requirement that it select the locations of the three crossings heretofore mentioned within ten days of the rendition of the judgment without providing for alternative monetary relief placed a heavy burden on defendant and deprived it of its property without due process of law.
Because the property is not yet subdivided, it would be impossible for anyone, even defendant, at this time to state what the ultimate development will be. This being so, this court cannot say that the three locations for crossings selected by defendant are inadequate especially in view of Mr. Lemarie's testimony that one crossing supporting a parallel track along the right of way would suffice. Defendant is not entitled to monetary award and there has been no deprivation of due process of law.
(7) Appellant complains that it should not have been taxed with court costs.
According to LSA-R.S. 19:12, in expropriation matters, if a tender is made of the *307 true value of the property to the owner thereof before proceedings for a forced taking of the property are instituted, the cost of the expropriation proceeding shall be paid by the owner. Prior to the institution of this suit plaintiff tendered defendant the sum of $98,450, which was the exact amount awarded by the trial court for the right of way and temporary servitude and "normal" damages; hence, the taxation of costs against defendant.
In view of our conclusion that defendant may be entitled to some severance damages in a yet undetermined amount, we think that the judgment insofar as it taxes the costs against defendant should be set aside and that any taxation of costs be held in abeyance until it is determined whether defendant recovers any severance damages.
In view of our conclusion that the defendant has not adequately proven its claim to severance damages, and believing such damage may have been incurred, in the interest of justice and under the authority vested in us by law, we now remand this case to the lower court in order to permit the defendant to establish by competent evidence whatever difference there may be between the market value of its property outside the right of way immediately before and immediately after expropriation, and the trial judge is authorized to render any judgment on the question of severance damages as is warranted by the law and the evidence, and to tax the costs against the unsuccessful litigant.
Therefore, the judgment is affirmed, except in the matter of the rejection of defendant's claim for severance damages, and as to that part thereof the judgment is reversed; the assessment of court costs against defendant is set aside; the case is remanded to the lower court for further proceedings not inconsistent with the views hereinabove expressed and the directions above given; costs of this appeal are to be paid by plaintiff-appellee.
Affirmed in part; reversed in part; set aside in part; remanded.